## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| Clean Water Action, et al., | ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) ) Civil Action No. 1:17-cv-0817-KBJ |
| E. SCOTT PRUITT, Administrator, U.S. Environmental Protection Agency, et al., | ) ) ) |
| Defendants. | ) ) ) |

## EPA's MOTION TO DISMISS OR TRANSFER OR, IN THE ALTERNATIVE, TO STAY ALL PROCEEDINGS, AND MEMORANDUM IN SUPPORT

Defendants United States Environmental Protection Agency and E. Scott Pruitt, Administrator of the United States Environmental Protection Agency (collectively "EPA") move under Fed. R. Civ. P. 12(b)(1) to dismiss this action or transfer it under 28 U.S.C. § 1631 to the United States Court of Appeals for the Fifth Circuit.  In the alternative, this Court should stay all proceedings in this case until August 25, 2017, and direct the parties to submit motions to govern further proceedings on that date.

Under Local Civil Rule 7(m), counsel for EPA conferred with counsel for plaintiffs, who indicated that they oppose this motion.

JEFFREY H. WOOD
Acting Assistant Attorney General
Environment and Natural Resources Division

JESSICA O'DONNELL (Bar No. 473166)
Environmental Defense Section
United States Department of Justice

OF COUNSEL:
JESSICA H. ZOMER
U.S. Environmental Protection Agency
Office of General Counsel
Washington, DC

*Counsel for Defendants*

# TABLE OF CONTENTS

Table of Authorities .................................................................................................... ii

INTRODUCTION ..................................................................................................... 1

BACKGROUND ....................................................................................................... 2

    I.      Statutory and Regulatory Background ................................................. 2

          A.      The Clean Water Act ............................................................. 2

          B.      The Steam Electric Effluent Limitations Guidelines Rule ........................ 4

          C.      The CWA's exclusive judicial review provision ....................................... 4

          D.      The Administrative Procedure Act ("APA") ........................... 5

    II.     Petitions for review of the ELG Rule in the Fifth Circuit ...................................... 5

    III.    EPA's ongoing administrative reconsideration proceedings ................................ 6

    IV.    This litigation ......................................................................................... 7

STANDARD OF REVIEW ...................................................................................... 7

ARGUMENT ............................................................................................................ 8

    I.      The court of appeals has jurisdiction under § 1369(b)(1) and *TRAC*. ................... 8

          A.      The Fifth Circuit has jurisdiction under § 1369(b)(1) and *TRAC*. .............. 9

          B.      Even if *TRAC* does not apply, the Stay Notice is an ancillary matter well within the Fifth Circuit's jurisdiction over the ELG Rule. ................................................................................................. 12

          C.      Jurisdiction under § 1369(b)(1) cuts off jurisdiction under the federal question statute. .......................................................... 14

    II.     This Court should dismiss the action or transfer it to the Fifth Circuit. ............... 15

    III.    In the alternative, this Court should stay all proceedings in this case until August 25, 2017 ....................................................................................... 16

CONCLUSION ......................................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**

*Abbott Labs. v. Gardner,*
  387 U.S. 136 (1967) ........................................................................................... 17

*Acevedo-Carranza v. Ashcroft,*
  371 F.3d 539 (9th Cir. 2004) ....................................................................... 15, 16

*\*Am. Petroleum Inst. v. EPA,*
  683 F.3d 382 (D.C. Cir. 2012) ..................................................................... 16, 17

*\*American Iron and Steel Institute v. EPA,*
  115 F.3d 979 (D.C. Cir. 1997) ................................................................. 12, 13, 14

*City of Tacoma, Washington v. F.E.R.C.,*
  460 F.3d 53 (D.C. Cir. 2006) ................................................................................ 15

*\*Decker v. Nw. Envtl. Def. Ctr.,*
  568 U.S. 597, 133 S. Ct. 1326 (2013) ........................................................... 5, 8, 14

*Defenders of Wildlife v. EPA,*
  420 F.3d 946 (9th Cir. 2005), *rev'd and remanded,*
  *Nat'l Ass'n of Home Builders v. Defs. of Wildlife,*
  551 U.S. 644 (2007) ............................................................................................. 15

*Hussain v. Lewis,*
  848 F. Supp. 2d 1 (D.D.C. 2012) ........................................................................ 16

*In re Natural Resources Defense Council,*
  645 F.3d 400 (D.C. Cir. 2011) ............................................................................ 11

*\*International Union, United Mine Workers of America v. Department of Labor,*
  358 F.3d 40 (D.C. Cir. 2004) ............................................................................... 10

*Jamison v. F.T.C.,*
  628 F. Supp. 1548 (D.D.C. 1986) ....................................................................... 16

*Khadr v. United States,*
  529 F.3d 1112 (D.C. Cir. 2008) ............................................................................. 8

*Kokkonen v. Guardian Life Ins. Co. of Am.,*
  511 U.S. 375 (1994) ............................................................................................... 8

*Landis v. North Am. Co.,
  299 U.S. 248 (1936) ................................................................................ 16

Maier v. EPA,
  114 F.3d 1032 (10th Cir. 1997) ............................................................. 14

Morrow v. District of Columbia,
  417 F.2d 728 (D.C. Cir. 1969) ............................................................... 12

Nat'l Park Hospitality Ass'n v. Dep't of Interior,
  538 U.S. 803 (2003) ................................................................................ 17

Nat'l Treasury Emps. Union v. United States,
  101 F.3d 1423 (D.C. Cir. 1996) ............................................................. 17

National Wildlife Fed'n v. EPA,
  286 F.3d 554 (D.C. Cir. 2002) ................................................................. 3

Oryszak v. Sullivan,
  576 F.3d 522 (D.C. Cir. 2009) ............................................................... 14

Pub. Citizen Health Research Grp. v. FDA,
  740 F.2d 21 (D.C. Cir. 1984) ................................................................. 18

Seneca Nation of Indians v. U.S. Dep't of Health & Human Servs.,
  144 F. Supp. 3d 115 (D.D.C. 2015) ....................................................... 16

Sierra Club v. Jackson,
  813 F. Supp. 2d 149 (D.D.C. 2011) .............................................. 11, 12, 13, 14, 15

Steel Co. v. Citizens for a Better Env't,
  523 U.S. 83 (1998) .................................................................................... 8

*Telecommunications Research and Action Ctr. v. FCC, ("TRAC"),
  750 F.2d 70 (D.C. Cir. 1984) ....................................... 1, 5, 8, 9, 10, 11, 12, 14, 16

Tex. Oil & Gas Ass'n v. EPA,
  161 F.3d 923 (5th Cir. 1998) ................................................................... 3

Whitney Nat'l Bank v. Bank of New Orleans & Trust Co.,
  379 U.S. 411 (1965) ................................................................................ 14

**Statutes**

5 U.S.C. § 705 ....................................................... 5, 6, 7, 9, 10, 11, 13, 15, 18

28 U.S.C. § 1331 ................................................................................................. 14, 15

28 U.S.C. § 1631 ....................................................................................... 1, 15, 16, 19

28 U.S.C. § 2112(a) ..................................................................................................... 5

33 U.S.C. § 1311 ......................................................................................................... 5

33 U.S.C. § 1311(a) ..................................................................................................... 2

33 U.S.C. § 1311(b) ..................................................................................................... 3

33 U.S.C. § 1311(b)(3)(B) ........................................................................................... 3

33 U.S.C. § 1314(b)(2)(B) ........................................................................................... 3

33 U.S.C. § 1316 ......................................................................................................... 5

33 U.S.C. § 1316(a)(1) ................................................................................................. 3

33 U.S.C. § 1317 ......................................................................................................... 5

33 U.S.C. § 1317(b) ..................................................................................................... 3

33 U.S.C. § 1317(d) ..................................................................................................... 3

33 U.S.C. § 1342 ......................................................................................................... 3

33 U.S.C. § 1342(a) ..................................................................................................... 3

33 U.S.C. § 1342(a)(1) ................................................................................................. 3

33 U.S.C. § 1369 ...................................................................................................... 4, 8

33 U.S.C. § 1369(b) ..................................................................................................... 4

*33 U.S.C. § 1369(b)(1) ......................................................... 1, 4, 5, 8, 9, 10, 12, 14, 15

*33 U.S.C. § 1369(b)(1)(A) ......................................................................................... 5

*33 U.S.C. § 1369(b)(1)(C) ......................................................................................... 5

*33 U.S.C. § 1369(b)(1)(E) ......................................................................................... 5

**Rules**

Fed. R. Civ. P. 12(b)(1)..................................................................................................... 7

Fed. R. App. P. 18 ............................................................................................................... 9

**Regulations**

40 C.F.R. § 125.3(c) ............................................................................................................ 3

40 C.F.R. § 423.13(g)(1)(i) ................................................................................................. 4

40 C.F.R. § 423.13(h)(1)(i) ................................................................................................. 4

40 C.F.R. § 423.13(i)(1)(i) .................................................................................................. 4

40 C.F.R. § 423.13(j)(1)(i) .................................................................................................. 4

40 C.F.R. § 423.13(k)(1)(i) ................................................................................................. 4

40 C.F.R. § 423.16(e) .......................................................................................................... 4

40 C.F.R. § 423.16(f) .......................................................................................................... 4

40 C.F.R. § 423.16(g) .......................................................................................................... 4

40 C.F.R. § 423.16(h) .......................................................................................................... 4

40 C.F.R. § 423.16(i) ........................................................................................................... 4

**Federal Register**

80 Fed. Reg. 67,838 (Nov. 3, 2015)..................................................................................... 4

82 Fed. Reg. 19,005 (Apr. 25, 2017) .................................................................................. 6

82 Fed. Reg. 26,017 (June 6, 2017) ............................................................................... 7, 18

**Legislative Materials**

H.R. Rep. No. 92-911, at 136 (1972), *reprinted in* 1 Legislative History of the Water Pollution
    Control Act Amendments of 1972, at 823 (Comm. Print 1973).................................. 4

## INTRODUCTION

In this action, Plaintiffs challenge EPA's notice granting a stay pending judicial review of certain compliance deadlines for a final rule—known as the Steam Electric Effluent Limitations Guidelines Rule (the "ELG Rule")—promulgated under the Clean Water Act ("CWA" or "Act"). The CWA, 33 U.S.C. § 1369(b)(1), provides that the court of appeals is the exclusive forum for judicial review of enumerated agency actions such as the ELG Rule. Petitions for review of the ELG Rule are currently pending in the Fifth Circuit, some of which were filed by the same plaintiffs in this action. Under well-settled D.C. Circuit precedent, *any suit* seeking relief that may affect a court of appeals' future exclusive jurisdiction must be brought in the first instance in the court of appeals. *Telecommunications Research and Action Ctr. v. FCC*, 750 F.2d 70, 76 (D.C. Cir. 1984) ("*TRAC*"). Because this action may affect the Fifth Circuit's jurisdiction over the ELG Rule, *TRAC* applies and jurisdiction resides in the Fifth Circuit.

Even if *TRAC* does not apply, Plaintiffs' challenges are ancillary matters within the Fifth Circuit's jurisdiction over the ELG Rule. The Stay Notice grows out of the challenges to the ELG Rule and is just one step in EPA's ongoing administrative proceedings on reconsideration of the ELG Rule. Moreover, the Fifth Circuit will necessarily have to consider the procedural implications of the reconsideration proceedings in the merits challenges. Having one court consider all of the issues related to the substantive and procedural aspects of the ELG Rule and related reconsideration proceedings serves the interests of judicial economy and uniformity. Because jurisdiction over the agency action under review properly resides in the Fifth Circuit, this Court lacks jurisdiction and should dismiss the action or transfer it to the Fifth Circuit under 28 U.S.C. § 1631.

In the alternative, this Court should stay all proceedings in this case until August 25, 2017, when EPA anticipates that its plans for additional administrative proceedings concerning the ELG Rule may be better known. The new EPA Administrator is currently reconsidering the ELG Rule, in response to two administrative petitions for reconsideration submitted by the Utility Water Act Group and the Small Business Administration's Advocacy Office, and has obtained a stay of proceedings in the Fifth Circuit, until August 14, 2017, on which date it must file a motion to govern further proceedings in that court. Meanwhile, on June 6, 2017, EPA published a notice of proposed rulemaking for a rule that would postpone the same ELG Rule compliance deadlines that are the subject of agency action challenged here until it completes additional rulemaking proceedings to reconsider the ELG Rule. In light of EPA's ongoing administrative proceedings, if this Court does not dismiss this case or transfer it to the Fifth Circuit, prudential reasons justify a stay of all proceedings until the scope of EPA's reconsideration proceedings is better known (at which point a further stay may be warranted to allow for completion of rulemaking proceedings). EPA suggests that the Court direct the parties to report back to the Court on August 25, 2017, with their proposals for further proceedings in this case.

## BACKGROUND

## I.    Statutory and Regulatory Background

### A.    The Clean Water Act

The Clean Water Act prohibits the "discharge of any pollutant" by "any person" except as authorized by the Act. 33 U.S.C. § 1311(a). One of the principal mechanisms for complying with the CWA is through the National Pollutant Discharge Elimination System ("NPDES"), which provides for discharge permits for direct discharges to waters covered by the CWA.

2

Additionally, indirect dischargers—i.e., those who discharge to publicly owned treatment works ("POTWs")—must comply with pretreatment standards that are directly enforceable. Both types of dischargers must comply with certain requirements and conditions established under other provisions of the Act, including technology-based effluent limitations and pretreatment standards. 33 U.S.C. §§ 1311(b), 1317(b), 1342(a); *see generally Tex. Oil & Gas Ass'n v. EPA*, 161 F.3d 923, 927 (5th Cir. 1998). EPA promulgates nationally applicable technology-based effluent limitations and standards governing the discharge of pollutants under 33 U.S.C. § 1311(b). Specifically, EPA develops "guidelines" for effluent limitations applicable to existing sources based on certain factors set forth in 33 U.S.C. § 1314(b)(2)(B), and establishes new source performance standards under 33 U.S.C. § 1316(a)(1).

EPA establishes limitations and standards for specific industries after conducting an in-depth analysis of each industry, the wastestreams to be regulated, and a technology or technologies that represent the statutorily prescribed level of control for each wastestream. EPA then identifies the discharge limitations or standards that correspond to the proper use of the identified technology, but does not require facilities to install that technology. *See National Wildlife Fed'n v. EPA*, 286 F.3d 554, 558 (D.C. Cir. 2002). Rather, each facility may use any approach that achieves the limitations or standards.

Once EPA establishes effluent limitations and performance standards for an industry as a whole, they are primarily implemented through NPDES permits issued to individual facilities under Clean Water Act section 402, 33 U.S.C. § 1342.[1] Pretreatment standards applicable to indirect discharges are directly enforceable. *See* 33 U.S.C. § 1317(d).

_____

[1] Where EPA has not established categorical limitations for an industry, EPA and state permitting authorities establish individual NPDES permit limitations on a case-by-case basis, using their best professional judgment. *See id.* §§ 1311(b)(3)(B), 1342(a)(1); 40 C.F.R. § 125.3(c).

**B.      The Steam Electric Effluent Limitations Guidelines Rule**

On November 3, 2015, EPA promulgated a rule under the CWA entitled, "Effluent

Limitations Guidelines and Standards for the Steam Electric Power Generating Point Source

Category," 80 Fed. Reg. 67,838 (Nov. 3, 2015) (the "Rule" or "ELG Rule").  The Rule

establishes new, more stringent effluent limitations guidelines, performance standards, and

pretreatment standards that limit the level of certain toxic and nutrient pollutants in several of the

effluent wastestreams generated by steam electric power plants.  The limitations and standards in

the final Rule are based on a highly technical analysis of availability, effectiveness, and

economic achievability of technologies to limit the target pollutants in the plants' effluent

discharges.

Under the ELG Rule, sources that must obtain NPDES permits must comply with the

new, more stringent limitations as soon as possible beginning November 1, 2018, but no later

than December 31, 2023, as determined by the permitting authority in the NPDES permitting

process.  *See* 40 C.F.R. §§ 423.13(g)(1)(i), (h)(1)(i), (i)(1)(i), (j)(1)(i), and (k)(1)(i).  Sources

subject to pretreatment standards must comply with the new, more stringent limits by November

1, 2018.  *See* 40 C.F.R. §§ 423.16(e), (f), (g), (h), and (i).

**C.      The CWA's exclusive judicial review provision**

The CWA's review provision, 33 U.S.C. § 1369, was intended by Congress to "establish

a clear and orderly process for judicial review" of key EPA decisions implementing the CWA.

*See* H.R. Rep. No. 92-911, at 136 (1972), *reprinted in* 1 Legislative History of the Water

Pollution Control Act Amendments of 1972 at 823 (Comm. Print 1973).  Under § 1369(b), the

federal courts of appeals have jurisdiction to review the matters enumerated in that section.  The

Supreme Court has made clear that, where §1369(b)(1) applies, "it is the *exclusive* means of

4

challenging actions covered by the statute." *Decker v. Nw. Envtl. Def. Ctr.*, 568 S.Ct. 597, 133 S.

Ct. 1326, 1334 (2013) (emphasis added); *TRAC*, 750 F.2d 77 ("a statute which vests jurisdiction

in a particular court cuts off original jurisdiction in other courts in all cases covered by that

statute") (citations omitted).  Effluent limitations promulgated under 33 U.S.C. § 1311,

performance standards promulgated under § 1316, and pretreatment standards promulgated

under § 1317 are actions subject to exclusive appellate review under §§ 1369(b)(1)(A), (C), and

(E).

> ### D.    The Administrative Procedure Act ("APA")

Section 705 of the APA, 5 U.S.C. § 705, provides for relief pending judicial review of

agency action.  It authorizes an agency to "postpone the effective date of action taken by it,

pending judicial review," where the agency finds that "justice so requires."  *Id.*  In addition,

§ 705 authorizes a reviewing court to "issue all necessary and appropriate process to postpone

the effective date of an agency action or to preserve status or rights pending conclusion of the

review proceedings," based upon "such conditions as may be required and to the extent

necessary to prevent irreparable injury."  *Id.*

## II.    Petitions for review of the ELG Rule in the Fifth Circuit

Following EPA's promulgation of the ELG Rule, numerous parties, including several of

the plaintiffs in this case, filed seven petitions for review of the Rule under 33 U.S.C.

§ 1369(b)(1), which were consolidated in the Fifth Circuit, under the lead case *Southwestern

Electric Power Co. v. EPA*, No. 15-60821, pursuant to 28 U.S.C. § 2112(a).[2]  Petitioning groups

---

[2] Plaintiffs Clean Water Action, Waterkeeper Alliance, Inc., Environmental Integrity Project, and Sierra Club are petitioners in the Fifth Circuit petitions.  Plaintiff Clean Water Action is an intervenor in that case.  Other petitioners to that litigation include: Southwestern Electric Power Co., Utility Water Act Group, Union Electric, Inc. (dba Ameren Missouri), Duke Energy Indiana, Inc., American Water Works Association, National Association of Water Companies, and the City of Springfield, Missouri, by and through the Board of Public Utilities.

filed three opening merits briefs, comprising 35,000 words, on December 5, 2016.  On April 12,

2017, before filing EPA's merits brief, EPA Administrator Pruitt announced that he would

reconsider the ELG Rule, in response to petitions for administrative reconsideration of the Rule

submitted by the Utility Water Act Group and the Small Business Administration Advocacy

Office.  As a result, EPA requested a 120-day stay of proceedings in the Fifth Circuit, while the

Administrator determines which, if any, provisions of the Rule he plans to revise.  The Fifth

Circuit granted EPA's request.  *Southwestern Electric Power Co.*, No. 15-60821, Doc. No.

00513964356.  EPA is required to file a motion to govern further proceedings by August 14,

2017, advising the Fifth Circuit of further administrative proceedings to reconsider the Rule.  *Id.*

## III.    EPA's ongoing administrative reconsideration proceedings

At the same time EPA announced its reconsideration of the ELG Rule, Administrator

Pruitt also signed the notice that is the subject of this suit.  The notice, entitled "Postponement of

Certain Compliance Dates for Effluent Limitations Guidelines and Standards for the Steam

Electric Generating Power Point Source Category," 82 Fed. Reg. 19,005 (Apr. 25, 2017) ("Stay

Notice"), postpones the applicable compliance dates for the new effluent limitations and

standards for each of several wastestreams pending judicial review, pursuant to 5 U.S.C. § 705.

82 Fed. Reg. at 19,005.  In particular, the Stay Notice applies to the following wastestreams: flue

gas desulfurization wastewater, fly ash transport water, bottom ash transport water, flue gas

mercury control wastewater, and gasification wastewater.  *Id.*  As explained in the notice, in light

of the capital expenditures that facilities incurring costs under the Rule will have to undertake to

meet the Rule's fast-approaching compliance deadlines, the pending litigation, and EPA's

reconsideration of the Rule, EPA determined that "justice requires it to postpone the compliance

dates of the Rule that have not yet passed, pending judicial review."  *Id.*

6

The Stay Notice was intended as a temporary measure, to preserve the status quo pending judicial review and in light of EPA's reconsideration of the ELG Rule.  On May 26, 2017, EPA signed a notice for publication in the Federal Register, proposing to postpone (through rulemaking) the same compliance deadlines subject to the Stay Notice, pending completion of agency reconsideration proceedings.  82 Fed. Reg. 26,017 (June 6, 2017).  As explained in the proposed rule, "[b]ecause Section 705 of the APA authorizes an Agency to postpone the effective date of an action pending judicial review, EPA is undertaking this notice-and-comment rulemaking to postpone certain compliance dates in the rule in the event that the litigation ends, and while the Agency is undertaking reconsideration."  *Id.* 26,018.  The comment period for that rulemaking closes on July 6, 2017.

## IV.    This litigation

On May 3, 2017, Plaintiffs filed their complaint in this Court, challenging the Stay Notice.  Plaintiffs assert six claims for relief: (1) failing to make required findings for a stay under 5 U.S.C. § 705; (2) staying the rule for purposes of reconsidering it; (3) staying the rule where the effective date has already passed; (4) staying portions of a rule, while leaving others in effect; (5) failing to provide adequate justification and consider relevant factors; and (6) failing to provide notice and comment.  Compl., ECF Doc. No. 1.  EPA's response to the complaint is due on July 10, 2017.

## STANDARD OF REVIEW

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), the court must determine whether the complaint sets forth allegations sufficient to establish the court's jurisdiction over the subject matter of the claims for relief.  Because federal courts are courts of limited jurisdiction and may hear cases only to the extent expressly provided by statute, the first

and fundamental question presented by every case is whether the court has jurisdiction to hear it.
*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("jurisdiction [must] be
established as a threshold matter").  The burden of establishing subject matter jurisdiction rests
with the plaintiff.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)
(citations omitted) (it is "to be presumed that a cause lies outside this limited jurisdiction, and the
burden of establishing the contrary rests upon the party asserting jurisdiction"); *Khadr v. United
States*, 529 F.3d 1112, 1115 (D.C. Cir. 2008).  Where subject matter jurisdiction does not exist,
"the court cannot proceed at all in any cause."  *Steel Co.*, 523 U.S. at 94 (internal quotation
marks and citation omitted).

## ARGUMENT

### I.   The court of appeals has jurisdiction under § 1369(b)(1) and *TRAC*.

The CWA restricts judicial review of certain actions taken under the Act to the federal
courts of appeals.  33 U.S.C. § 1369(b)(1).  The Supreme Court has made clear that when § 1369
applies, "it is the *exclusive* means of challenging actions covered by the statute." *Decker*, 133 S.
Ct. at 1334 (emphasis added).  It is undisputed that the ELG Rule is an action subject to review
under § 1369(b)(1) and, indeed, some of the Plaintiffs in this action have invoked appellate
jurisdiction under § 1369(b)(1) by petitioning for review of the final ELG Rule.  *See supra* n.2.
Under the D.C. Circuit's holding in *TRAC*, "any suit seeking relief that might affect the Circuit
Court's future jurisdiction is subject to the *exclusive* review of the Court of Appeals."  750 F.2d
at 75 (emphasis in original).  Plaintiffs' challenge to the Stay Notice may affect the Fifth
Circuit's jurisdiction, and thus *TRAC* dictates that jurisdiction to review the Stay Notice resides
not in this Court, but in the court of appeals under § 1369(b)(1).  Even if *TRAC* does not apply,

the Stay Notice is so tied up with matters within the Fifth Circuit's jurisdiction that any

challenges to the Stay Notice are properly within that court's ancillary jurisdiction.

### A.    The Fifth Circuit has jurisdiction under § 1369(b)(1) and *TRAC.*

Under the D.C. Circuit's decision in *TRAC* and its progeny, the Stay Notice is subject to

exclusive review in the Fifth Circuit pursuant to § 1369(b)(1).  In *TRAC*, the D.C. Circuit

considered the question: where a statute commits final agency action to review by the courts of

appeals, does that court have jurisdiction to hear suits seeking relief that would affect its future

statutory jurisdiction?  The court, in a ruling considered and approved by the entire court, held

that it does.  750 F.2d at 75 n.24.  Petitioners in that case sought to compel the Federal

Communications Commission ("FCC") to decide certain matters that were pending before the

agency, arguing that the FCC had unreasonably delayed in doing so.  Under the relevant judicial

review statute, exclusive jurisdiction to review orders of the FCC is vested in the appellate

courts.  The court reasoned that because its future jurisdiction to review the merits might be

defeated by the lack of agency action, the circuit court should also be the forum to resolve claims

that an agency has unreasonably delayed in taking action reviewable in the circuit court.  *Id.* at

76 (citations omitted).

Although *TRAC* involved an action seeking to compel an agency to perform a mandatory

statutory duty unreasonably delayed, the principles of *TRAC* apply to this action seeking review

of EPA's decision to stay implementation of a rule subject to exclusive appellate review.  To

begin, while EPA has independent authority to issue a stay of the ELG Rule under 5 U.S.C.

§ 705, had EPA declined to do so, jurisdiction to stay the Rule and issue other relief as necessary

to preserve the status quo is vested in the Fifth Circuit under § 705 and the Federal Rules of

Appellate Procedure.  Rule 18 of the Federal Rules of Appellate Procedure requires an applicant

for a stay of an agency rule pending judicial review to request one from the agency before moving the court for such relief because, as explained in the Advisory Committee Notes, § 705 "confers general authority on both agencies and reviewing courts to stay agency action pending review." Since the Fifth Circuit's jurisdiction to review the ELG Rule necessarily includes its authority under § 705 to issue a stay of the rule pending judicial review, it should also extend to claims that a stay issued by the agency under § 705 is inappropriate. Moreover, because a stay of the ELG Rule is within the Fifth Circuit's exclusive jurisdiction to grant or deny, it is the circuit court's current, not merely future, jurisdiction that would be implicated by this Court's review of the Stay Notice. Thus, the logic of *TRAC* applies here with equal or even greater force than in an action for unreasonable delay.

Additionally, under Plaintiffs' theory of the case, the Stay Notice is invalid because, among other reasons, EPA did not evaluate the likelihood of success on the merits and failed to provide an adequate rationale for the Stay Notice. Compl. ¶¶ 59, 83. Both of these claims threaten to put the merits of the ELG Rule at issue in this litigation. But under § 1369(b)(1), the Fifth Circuit has exclusive jurisdiction over the merits of the ELG Rule challenges. Thus, this Court's review of Plaintiffs' claims might intrude on matters that are within the Fifth Circuit's exclusive jurisdiction to review the ELG Rule.

Other D.C. Circuit decisions since *TRAC* recognize that its holding extends to suits beyond actions for unreasonable delay. In *International Union, United Mine Workers of America v. Department of Labor*, 358 F.3d 40, 43 (D.C. Cir. 2004), the court found the reasoning in *TRAC* supported exclusive appellate jurisdiction over an action challenging an agency's withdrawal of a proposed rule that, if finalized, would be subject to exclusive appellate jurisdiction because the "withdrawal of a proposed rule defeats th[e] [circuit] [c]ourt's

prospective jurisdiction."  Indeed, the court found that "[i]t would be anomalous [] for the district court to review claims of arbitrary and capricious withdrawal, while the court of appeals entertains claims of unreasonable delay."  *Id.*  So too here.  If a withdrawal of a proposed rule is within a circuit court's exclusive jurisdiction to hear, then an action staying that rule should be, as well.  Both actions clearly implicate the court of appeals' exclusive jurisdiction over the underlying rule and thus, under *TRAC*, must be heard in the circuit court.

The decision in *Sierra Club v. Jackson*, 813 F. Supp. 2d 149 (D.D.C. 2011), which reached the opposite conclusion regarding district court jurisdiction to review a § 705 stay of a final action that is otherwise subject to exclusive appellate review, is not binding on this Court and incorrectly decided the jurisdictional issue.  In that case, the court declined to apply *TRAC* based on the incorrect conclusion that district court review of EPA's § 705 stay of a rule under the Clean Air Act would not interfere with the circuit court's jurisdiction over pending petitions for review of the rule.  *Id.* at 162.  That decision did not consider that § 705 gives both the agency and the circuit court authority to issue a stay of the ELG Rule pending judicial review and thus to subject an agency stay to review by a district court indeed intrudes on an issue within the circuit court's exclusive jurisdiction to decide – i.e., whether a stay pending judicial review is appropriate.  *Id.*

Moreover, the court in *Sierra Club* relied on case law that is inapposite in this case.  The court cited *In re Natural Resources Defense Council*, 645 F.3d 400, 405 (D.C. Cir. 2011), for the proposition that *TRAC* does not apply in circumstances where the basis for a circuit court's jurisdiction relies on a speculative chain of events.  There is nothing speculative about the Fifth Circuit's current jurisdiction over the final ELG Rule, which includes the authority to entertain requests for a stay of the rule pending judicial review.  And, because the ELG Rule is subject to

§ 1369(b)(1), any rule revising the ELG Rule, including the proposed rule to postpone the

compliance deadlines, would be subject to exclusive review in the court of appeals under

§ 1369(b)(1).  Therefore, this Court should decline to follow the holding in *Sierra Club*, 813 F.

Supp. 2d at 162, regarding the applicability of *TRAC* in that case.  Because *TRAC* applies to

Plaintiffs' challenge to the Stay Notice, this Court lacks jurisdiction.

> **B.**     **Even if *TRAC* does not apply, the Stay Notice is an ancillary matter well within the Fifth Circuit's jurisdiction over the ELG Rule.**

The D.C. Circuit has held that, in cases governed by a specialized statutory review

provision, like § 1369(b)(1), "questions ancillary or incidental to, or growing out of, the main

action … may be taken cognizance of by the court and determined, since such jurisdiction is in

aid of its authority over the principal matter."  *Morrow v. District of Columbia*, 417 F.2d 728,

737-38 (D.C. Cir. 1969).  Thus, in *American Iron and Steel Institute v. EPA*, 115 F.3d 979, 986

(D.C. Cir. 1997), the D.C. Circuit found that it had jurisdiction to consider challenges to parts of

an agency rule promulgated under the CWA that were not expressly identified in § 1369(b)(1),

but were otherwise ancillary to the court's review of agency action that clearly was within its

jurisdiction under § 1369(b)(1).  The court reasoned that given the technical nature of the rule

and the interest of assuring coherent review of all issues related to the same agency action, the

court could properly assert ancillary jurisdiction over those matters that were not expressly

within § 1369(b)(1)'s grant of jurisdiction.  *Am. Iron and Steel Inst.*, 115 F.3d at 986.

For the same reasons as those expressed in *American Iron and Steel Institute*, the Fifth

Circuit is the proper forum for Plaintiffs' challenge to the Stay Notice because it involves

"questions ancillary to, and growing out of" the challenges to the ELG Rule currently pending in

that court.  115 F.3d at 986 (quoting *Morrow*, 417 F.2d at 737-38).  As discussed above, it makes

little sense for this Court to consider Plaintiffs' challenge to the Stay Notice, where the Fifth

Circuit is the sole forum with jurisdiction over affirmative requests for a stay of the ELG Rule

pending judicial review, as well the sole forum with jurisdiction over the merits of the ELG Rule.

Again, the decision in *Sierra Club*, 813 F. Supp. 2d at 160-61, should have no bearing on

this Court's analysis of the jurisdictional issue here.  In that case, the court concluded that review

of a § 705 stay of a Clean Air Act rule was not within the circuit court's ancillary jurisdiction

because, in the court's (incorrect) view, there was insufficient substantive overlap between the

challenges to the stay of the rule and the challenges to the merits of the rule over which the

circuit court had exclusive jurisdiction.  *Id.*  The court reasoned that its consideration of the

adequacy of the stay would not cause a jurisdictional problem with the circuit court's

consideration of the merits because "the Court will give deference to EPA's 'ultimate conclusion

on the substantive merits of its rules.'"  *Id.* at 161 (citation omitted).  This reasoning merely

states the applicable standard of review for agency action on the merits; the court did not further

explain its reasoning, and in particular did not elaborate on how granting "deference" to *EPA*

solves the underlying problem presented by two separate *courts* both considering the merits of

the same rule.  Like the plaintiffs in *Sierra Club*, Plaintiffs in this case challenge the substantive

rationale for the Stay Notice, Compl. ¶ 83, which is inextricably tied up with the merits of the

ELG Rule, which only the Fifth Circuit has jurisdiction to review.  Because the *Sierra Club*

court's conclusion that its consideration of the adequacy of the agency's justifications for the

stay at issue would not interfere with the circuit court's exclusive jurisdiction to review the

merits of the rule is unpersuasive, it should not be followed here.  *See* 813 F. Supp. 2d at 160.

Moreover, as a practical matter, the Fifth Circuit will soon be presented with deciding

any procedural issues tied up with EPA's ongoing administrative proceedings on reconsideration

of the ELG Rule, and therefore is the forum more "capable of treating the case coherently."  *Am.*

*Iron and Steel Inst.*, 115 F.3d at 986 (citations omitted). The Stay Notice is just one step in EPA's ongoing administrative proceedings on reconsideration and that court will necessarily have to consider the procedural implications of the reconsideration proceedings on the merits challenges. Having one court consider all of the issues related to the substantive and procedural aspects of the ELG Rule and related reconsideration proceedings serves the interests of judicial economy and uniformity. *See id*.

C.     **Jurisdiction under § 1369(b)(1) cuts off jurisdiction under the federal question statute.**

Although Plaintiffs assert jurisdiction in this Court under the federal question statute, 28 U.S.C. § 1331, it is well-settled in this Circuit that § 1331 does not provide jurisdiction where, as here, Congress has specified a specialized judicial review procedure for agency action.[3] "[A] statute which vests jurisdiction in a particular court cuts off original jurisdiction in other courts in all cases covered by that statute." *TRAC*, 750 F. 2d at 77 (citations omitted).[4] The Supreme Court has expressly stated that where § 1369(b)(1) applies, "it is the exclusive means of challenging actions covered by the CWA." *Decker*, 133 S. Ct. at 1334; *see also Maier v. EPA*, 114 F.3d 1032, 1036-37 (10th Cir. 1997) (recognizing same). Because jurisdiction to review the Stay Notice is vested in the court of appeals under § 1369(b)(1), this Court lacks jurisdiction.

It is of no relevance to the jurisdictional analysis that the Stay Notice was issued under APA § 705, as opposed to the CWA. *Contra Sierra Club v. Jackson*, 813 F. Supp. 2d at 158-

---

[3] While the APA provides a waiver of sovereign immunity for suits against the United States, it is "not a jurisdiction-conferring statute." *Oryszak v. Sullivan*, 576 F.3d 522, 524 (D.C. Cir. 2009) (internal quotations and citation omitted). Rather, in cases arising under the APA, subject matter jurisdiction is asserted under the federal question statute, which establishes subjects that are within the jurisdiction of federal courts to entertain ("civil actions arising under the Constitution, laws, or treaties of the United States"). 28 U.S.C. § 1331.

[4] *See also Whitney Nat'l Bank v. Bank of New Orleans & Trust Co.*, 379 U.S. 411 (1965) (where Congress has enacted a specific statutory scheme of review, that mode must be adhered to notwithstanding an express command of exclusiveness).

160.  It is well settled in this Circuit that jurisdiction to consider an agency action pursuant to a specialized judicial review statute, like 33 U.S.C. § 1369(b)(1), encompasses review of related agency action taken under another statute, even if independent review of such action would be in the district court pursuant to the APA and the federal question statute.  *See, e.g., City of Tacoma, Washington v. F.E.R.C.*, 460 F.3d 53, 76 (D.C. Cir. 2006); *accord Defenders of Wildlife v. EPA*, 420 F.3d 946, 956 (9th Cir. 2005) (in review of EPA decision, court of appeals has jurisdiction to consider adequacy of BiOp on which EPA relied), *rev'd and remanded, Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644 (2007).

Because jurisdiction to review the Stay Notice lies in the circuit court under § 1369(b)(1), this Court lacks jurisdiction under 28 U.S.C. § 1331.

## II.    This Court should dismiss the action or transfer it to the Fifth Circuit.

Because this Court lacks jurisdiction over Plaintiffs' claims, dismissal is an appropriate remedy.  Plaintiffs will not be prejudiced by dismissal.  Most of the Plaintiffs here already have petitions pending or are intervenors in the Fifth Circuit and can move that court to lift the abeyance in that case to challenge the Stay Notice.  As to those Plaintiffs who are not parties to the Fifth Circuit proceeding, the United States would not oppose a motion to intervene in the case so that those parties could participate in the challenge to the Stay Notice.

In the alternative, the Court may transfer this action under 28 U.S.C. § 1631 to the Fifth Circuit, so that it may be consolidated with the Fifth Circuit petitions for review of the ELG Rule.  Under § 1631, a court has authority to transfer a case if: "(1) the court would have been able to exercise jurisdiction on the date that it was filed in the district court; (2) the district court lacked jurisdiction over the case; and (3) the transfer is in the interests of justice."  *Acevedo-Carranza v. Ashcroft*, 371 F.3d 539, 542 (9th Cir. 2004).  The Fifth Circuit had jurisdiction on

the date that this action was filed.  Where, as here, a district court lacks jurisdiction by virtue of *TRAC*, courts have recognized that transfer under § 1631 is appropriate.  *See, e.g., TRAC*, 750 F.2d at 79 n.37; *Jamison v. F.T.C.*, 628 F. Supp. 1548, 1552 & n.4 (D.D.C. 1986).  If this Court finds that it is in the interest of justice to do so, it may transfer this case to the Fifth Circuit instead of dismissing it.

### III.   In the alternative, this Court should stay all proceedings in this case until August 25, 2017

Instead of deciding to dismiss or transfer the case at this time, the Court may wish to briefly stay all proceedings, until August 25, 2017, pending the ongoing agency reconsideration proceedings.  While subject-matter jurisdiction is a threshold issue that must be decided before this Court proceeds to the merits, the Court has some leeway "to choose among threshold grounds for denying audience to a case on the merits."  *Seneca Nation of Indians v. U.S. Dep't of Health & Human Servs.*, 144 F. Supp. 3d 115, 118–19 (D.D.C. 2015) (citation and internal quotation marks omitted).  In particular, "[a] trial court has broad discretion to stay all proceedings in an action pending the resolution of independent proceedings elsewhere."  *Hussain v. Lewis*, 848 F.Supp.2d 1, 2 (D.D.C. 2012) (citation and internal quotation marks omitted); *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.").

And courts often stay proceedings where, as here, separate independent proceedings are pending before the agency.  *E.g., Am. Petroleum Inst. v. EPA*, 683 F.3d 382, 386–87 (D.C. Cir. 2012) (challenge to regulation of hazardous secondary materials under RCRA rendered unripe by agency proposal for new rulemaking); *Seneca Nation*, 144 F. Supp. 3d at 118–19 (motion to stay pending agency board decision represented non-jurisdictional threshold basis for denying

16

audience to the case on the merits).  A stay of judicial proceedings pending further administrative

action by the agency comports with fundamental principles of ripeness.  The ripeness doctrine

generally deals with when a federal court can or should decide a case.  Part of the doctrine is

subsumed into the Article III requirement of standing, which requires a petitioner to allege *inter*

*alia* an injury-in-fact that is "imminent" or "certainly impending."  *See Nat'l Treasury Emps.*

*Union v. United States,* 101 F.3d 1423, 1427–28 (D.C. Cir. 1996).  Even if a case is

constitutionally "ripe," though, there may also be "prudential reasons for refusing to exercise

jurisdiction." *Nat'l Park Hospitality Ass'n v. Dep't of Interior,* 538 U.S. 803, 808 (2003) (citation

and internal quotation marks omitted).  "In the context of agency decision making, letting the

administrative process run its course before binding parties to a judicial decision prevents courts

from 'entangling themselves in abstract disagreements over administrative policies, and …

protect[s] the agencies from judicial interference' in an ongoing decision-making process."  *Am.*

*Petroleum Inst.*, 683 F.3d at 386–87 (citing *Abbott Labs. v. Gardner,* 387 U.S. 136, 148 (1967)).

A stay of proceedings in this case until August 25, 2017, would serve the interests of

justice and judicial economy, as well as avoid the Court's premature entanglement in matters that

are still pending before EPA.  In light of the change in administration and in response to petitions

for administrative reconsideration of the ELG Rule, EPA is currently undertaking a review of the

ELG Rule to determine which, if any, provisions of the Rule it plans to revise.  To that end, it

obtained a stay of proceedings in the Fifth Circuit so that it may make such decisions before

filing its merits brief in that case.  Under the Fifth Circuit's abeyance order, EPA is required to

report to the Fifth Circuit on August 14, 2017, with its plans for reconsideration and the

appropriateness of further proceedings in that court.  It makes eminent sense for this Court to

stay proceedings for a short period of time, until August 25, 2017, by which time EPA

anticipates that the scope of any agency rulemaking to revise the ELG Rule and the potential impact on proceedings in the Fifth Circuit and in this Court may be better known.

Relatedly, EPA has initiated notice-and-comment rulemaking to postpone the compliance deadlines subject to the APA § 705 stay at issue in this case, pending completion of any additional agency rulemaking proceedings. 82 Fed. Reg. at 26,017. EPA is undertaking rulemaking to postpone the compliance deadlines to avoid the unnecessary expenditure of resources by sources subject to the Rule until EPA completes its reconsideration process, and because EPA recognizes that the stay of compliance deadlines under § 705 is only intended to be a temporary measure pending judicial review. *Id*. at 26,018. And, EPA will undertake additional notice-and-comment rulemaking with regard to any aspects of the ELG Rule EPA intends to revise. In these circumstances, prudential ripeness concerns counsel in favor of a brief stay of proceedings until August 25, 2017.

This brief stay of proceedings will not cause Plaintiffs any hardship. The ongoing rulemaking to postpone the ELG Rule compliance deadlines presents Plaintiffs the opportunity to "convince the agency to alter [its] tentative position" reflected in the § 705 stay. *Pub. Citizen Health Research Grp. v. FDA,* 740 F.2d 21, 30–31 (D.C. Cir. 1984). Similarly, if EPA proposes substantive revisions to the ELG Rule, Plaintiffs will be able to comment on those changes. In either case, even if the Plaintiffs fail to persuade EPA to change course, they will have the opportunity to seek judicial review of any final action EPA takes. Allowing the administrative process to run its course, however, will avoid "inefficient" and unnecessary "piecemeal review." *Id.* at 30 (citation and internal quotation marks omitted). Accordingly, a brief stay of proceedings is warranted in light of the ongoing agency reconsideration proceedings.

If this Court does not dismiss this case or transfer it to the Fifth Circuit, it should stay all proceedings in this case until August 25, 2017. Additionally, EPA requests that the Court order the parties to file motions to govern further proceedings on that date.

## CONCLUSION

The Fifth Circuit has exclusive jurisdiction to review Plaintiffs' claims and therefore this Court does not. The Court should dismiss the action or transfer it to the Fifth Circuit pursuant to 28 U.S.C. § 1631. In the alternative, in light of the ongoing agency proceedings regarding the ELG Rule that is at the heart of Plaintiffs' challenge, the Court should stay all proceedings in this case until August 25, 2017, and direct the parties to file motions to govern further proceedings on that date.

Dated: June 13, 2017                    Respectfully submitted,

                                        JEFFREY H. WOOD
                                        Acting Assistant Attorney General
                                        Environment and Natural Resources Division

                                          /s/  Jessica O'Donnell
                                        JESSICA O'DONNELL (Bar No. 473166)
                                        United States Department of Justice
                                        Environmental Defense Section
                                        P.O. Box 7611
                                        Washington, DC 20044
                                        T: (202) 305-0851
                                        F: (202) 514-8865
                                        jessica.o'donnell@usdoj.gov

OF COUNSEL:
JESSICA H. ZOMER
U.S. Environmental Protection Agency
Office of General Counsel
Washington, DC

                                        Counsel for Defendants