## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| Clean Water Action, et al., )<br><br>Plaintiffs, )<br><br>v. )<br><br>E. SCOTT PRUITT, Administrator, U.S. )<br>Environmental Protection Agency, et al., )<br><br>Defendants. ) | Civil Action No. 1:17-cv-0817-KBJ |

## EPA'S CONSOLIDATED OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR DISMISSAL OR TRANSFER OR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT

Defendants United States Environmental Protection Agency and Scott Pruitt,

Administrator of the United States Environmental Protection Agency (collectively "EPA")

oppose Plaintiffs' motion for summary judgment and cross-move for dismissal or transfer or

summary judgment. EPA's memorandum of points and authorities and a proposed order are

attached.

.

JEFFREY H. WOOD
Acting Assistant Attorney General
Environment and Natural Resources Division

JESSICA O'DONNELL (Bar No. 473166)
Environmental Defense Section
United States Department of Justice

OF COUNSEL:
JESSICA H. ZOMER
U.S. Environmental Protection Agency
Office of General Counsel
Washington, DC

*Counsel for Defendants*

## TABLE OF CONTENTS

Table of Authorities ....................................................................................................... iii

INTRODUCTION ........................................................................................................... 1

BACKGROUND AND STATEMENT OF FACTS ....................................................... 3

    I.    The Steam Electric Effluent Limitations Guidelines Rule ..................................... 3

        A.    The Clean Water Act ..................................................................... 3

        B.    The ELG Rule ............................................................................... 4

        C.    Estimated compliance costs of the ELG Rule ............................... 5

        D.    The ELG Rule's compliance deadlines .......................................... 6

    II.    Petitions for review of the ELG Rule in the Fifth Circuit ...................................... 6

    III.    The Stay Notice ..................................................................................................... 7

    IV.    EPA's proposed rule to postpone compliance deadlines ........................................ 8

    V.    This litigation ........................................................................................................ 9

STANDARD OF REVIEW ............................................................................................. 9

ARGUMENT ................................................................................................................. 11

    I.    The Court lacks subject-matter jurisdiction. ....................................................... 11

        A.    The Fifth Circuit has jurisdiction under § 1369(b)(1)(E) and *TRAC*. ....... 12

        B.    Even if *TRAC* does not apply, the Stay Notice is an ancillary matter well within the Fifth Circuit's jurisdiction over the ELG Rule. ....................................................................................... 15

        C.    Jurisdiction under § 1369(b)(1)(E) cuts off jurisdiction under the federal question statute. ......................................................... 16

        D.    This Court should dismiss the action or transfer it to the Fifth Circuit. ....................................................................................... 17

    II.    The Court alternatively may stay this case pending completion of EPA's administrative proceedings. ................................................................................... 18

III.    The Stay Notice is a lawful and reasonable exercise of EPA's discretion
        under APA § 705. .............................................................................................. 21

        A.    The Stay Notice comports with § 705 ..................................................... 22

              1.    EPA reasonably concluded that "justice so requires" a stay
                    of compliance deadlines................................................................ 22

              2.    The Stay Notice is pending judicial review in the Fifth
                    Circuit. ........................................................................................ 24

              3.    EPA was not required to weigh the compliance costs
                    against the estimated benefits of the Rule to issue the Stay
                    Notice. ......................................................................................... 26

        B.    Section 705 permits agencies to postpone one or more compliance
              dates in a rule. ......................................................................................... 27

        C.    Section 705 does not require agencies to use the four-part
              preliminary injunction standard employed by courts................................ 31

        D.    EPA was not required to undertake notice-and-comment
              rulemaking before issuing a temporary stay of compliance
              deadlines under APA § 705. ..................................................................... 35

IV.    Remedy ............................................................................................................... 38

CONCLUSION.................................................................................................................... 40

# TABLE OF AUTHORITIES

Cases

*Abbott Labs. v. Gardner,*
   387 U.S. 136 (1967) ................................................................ 20

*Acevedo-Carranza v. Ashcroft,*
   371 F.3d 539 (9th Cir. 2004) .................................................. 18

*Air Transport Ass'n of Am., Inc. v. Nat'l Mediation Bd.,*
   719 F. Supp. 2d 26 (D.D.C. 2010) .......................................... 10

*Alaska Ctr. For the Envt. v. Browner,*
   20 F.3d 981 (9th Cir. 1994) .................................................... 39

*Am. Petroleum Inst. v. EPA,*
   683 F.3d 382 (D.C. Cir. 2012) .......................................... 19, 20

*Am. Tort Reform Ass'n v. Occupational Safety & Health Admin.,*
   738 F.3d 387 (D.C. Cir. 2013) ................................................ 39

*American Iron and Steel Institute v. EPA,*
   115 F.3d 979 (D.C. Cir. 1997) .......................................... 15, 16

*Bowman Transp., Inc. v. Arkansas-Best Freight System, Inc.,*
   419 U.S. 281 (1974) ............................................................ 10, 11

*\*Camp v. Pitts,*
   411 U.S. 138 (1973) .............................................................. 3, 10

*\*Citizens to Preserve Overton Park, Inc. v. Volpe,*
   401 U.S. 402 (1971) .............................................................. 3, 10

*City of Tacoma, Washington v. F.E.R.C.,*
   460 F.3d 53 (D.C. Cir. 2006) .................................................. 17

*Cobell v. Norton,*
   240 F.3d 1081 (D.C. Cir. 2001) .............................................. 39

*County of Los Angeles v. Shalala,*
   192 F.3d 1005 (D.C. Cir. 1999) .............................................. 38

*\*Decker v. Nw. Envtl. Def. Ctr.,*
   568 U.S. 597 (2013) .......................................................... 11, 17

*Defenders of Wildlife v. EPA*,
  420 F.3d 946 (9th Cir. 2005), *rev'd and remanded on other grounds*,
*Nat'l Ass'n of Home Builders v. Defs. of Wildlife*,
  551 U.S. 644 (2007) ............................................................................................................ 17

*Devia v. Nuclear Regulatory Comm'n*,
  492 F.3d 421 (D.C. Cir. 2007) ......................................................................................... 21

*Envtl. Def. Fund, Inc. v. Costle*,
  657 F.2d 275 (D.C. Cir. 1981) ......................................................................................... 10

*FCC v. Fox Television Stations, Inc.*,
  556 U.S. 502 (2009) ..................................................................................................... 23, 34

*Flaherty v. Pritzker*,
  17 F. Supp. 3d 52 (D.D.C. 2014) ...................................................................................... 39

*Hill Dermaceuticals, Inc. v. Food & Drug Admin.*,
  709 F.3d 44 (D.C. Cir. 2013) ............................................................................................ 26

*Hussain v. Lewis*,
  848 F. Supp. 2d 1 (D.D.C. 2012) ...................................................................................... 19

*In re Natural Resources Defense Council*,
  645 F.3d 400 (D.C. Cir. 2011) ......................................................................................... 14

*International Union, United Mine Workers of America v. Department of Labor*,
  358 F.3d 40 (D.C. Cir. 2004) ........................................................................................... 13

*Jamison v. F.T.C.*,
  628 F. Supp. 1548 (D.D.C. 1986) ..................................................................................... 18

*Khadr v. United States*,
  529 F.3d 1112 (D.C. Cir. 2008) ....................................................................................... 10

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
  511 U.S. 375 (1994) ........................................................................................................... 9

*Landis v. North Am. Co.*,
  299 U.S. 248 (1936) ......................................................................................................... 19

*Maier v. EPA*,
  114 F.3d 1032 (10th Cir. 1997) ....................................................................................... 17

*Mexichem Speciality Resins, Inc. v. EPA*,
  787 F.3d 544 (D.C. Cir. 2015) .................................................................................... 25, 26

*Morrow v. District of Columbia*,
    417 F.2d 728 (D.C. Cir. 1969) ........................................................ 15, 16

*\*Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Auto. Ins. Co.*, ("*State Farm*"),
    463 U.S. 29 (1983) ...................................................................... 10, 23

*Nat'l Ass'n of Home Builders v. EPA*,
    682 F.3d 1032 (D.C. Cir. 2012) ........................................................ 23

*Nat'l Park Hospitality Ass'n v. Dep't of Interior*,
    538 U.S. 803 (2003) .................................................................... 19

*Nat'l Treasury Emps. Union v. United States*,
    101 F.3d 1423 (D.C. Cir. 1996) .................................................... 19, 20

*Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*,
    524 F.3d 917 (9th Cir. 2008) ........................................................ 39

*Oryszak v. Sullivan*,
    576 F.3d 522 (D.C. Cir. 2009) ...................................................... 16

*\*Palisades Gen. Hosp. Inc. v. Leavitt*,
    426 F.3d 400 (D.C. Cir. 2005) ...................................................... 38

*Perez v. Mortgage Bankers Ass'n*,
    135 S. Ct. 1199 (2015) .............................................................. 33

*Portland Cement Ass'n v. EPA*,
    665 F.3d 177 (D.C. Cir. 2011) ...................................................... 39

*Pub. Citizen Health Research Grp. v. FDA*,
    740 F.2d 21 (D.C. Cir. 1984) ...................................................... 20, 21

*\*Russello v. United States*,
    464 U.S. 16 (1983) .................................................................. 32

*Safety-Kleen Corp. v. EPA*,
    No. 92-1629, 1996 U.S. App. LEXIS 2324 (D.C. Cir. 1996) .................... 30

*Seneca Nation of Indians v. U.S. Dep't of Health & Human Servs.*,
    144 F. Supp. 3d 115 (D.D.C. 2015) ................................................ 18, 19

*Sierra Club v. Jackson*,
    813 F. Supp. 2d 149 (D.D.C. 2011) .............................................. 14, 15, 17

*Sierra Club v. Jackson*,
   833 F. Supp. 2d 11 (D.D.C. 2012) ............................................................. 25, 26, 32, 33, 37

*SKF USA, Inc. v. United States*,
   254 F.3d 1022 (Fed. Cir. 2001) .................................................................................. 34

*\*Skidmore v. Swift & Co.*,
   323 U.S. 134 (1944) ............................................................................................ 11, 28

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998) .............................................................................................. 9, 10

*\*Telecommunications Research and Action Ctr. v. FCC, ("TRAC")*,
   750 F.2d 70 (D.C. Cir. 1984) ......................................... 11, 12, 13, 14, 15, 17, 18

*Tex. Oil & Gas Ass'n v. EPA*,
   161 F.3d 923 (5th Cir. 1998) .................................................................................... 3

*\*United States v. Mead Corp.*,
   533 U.S. 218 (2001) ............................................................................................ 11, 27

*United States v. Villanueva-Sotelo*,
   515 F.3d 1234 (D.C. Cir. 2008) ............................................................................... 33

*Vermont Yankee Nuclear Power Corp. v. NRDC*,
   435 U.S. 519 (1978) ................................................................................................. 33

*Weyerhaeuser Co. v. Costle*,
   590 F.2d 1011 (D.C. Cir. 1978) ....................................................................... 4, 26, 27

*Whitney Nat'l Bank v. Bank of New Orleans & Trust Co.*,
   379 U.S. 411 (1965) ................................................................................................. 17

*Wyo. Outdoor Council v. U.S. Forest Service*,
   165 F.3d 43 (D.C. Cir. 1999) ................................................................................... 20

U.S. Constitution

U.S. Const. art. III ........................................................................................................ 19

Statutes

5 U.S.C. § 551(4) ........................................................................................................ 36

*5 U.S.C. § 551(13) ...................................................................................................... 28

5 U.S.C. § 553............................................................................................35, 36, 37

5 U.S.C. § 553(c)........................................................................................22, 35, 37

5 U.S.C. § 553(d)........................................................................................29, 37

5 U.S.C. § 554.............................................................................................36

5 U.S.C. § 556.............................................................................................35, 36

5 U.S.C. § 556(a).........................................................................................36

5 U.S.C. § 557.............................................................................................35, 36

5 U.S.C. § 701(b)(2)....................................................................................28

*5 U.S.C. § 705.. 1, 2, 7, 8, 9, 12, 13, 14, 17, 20, 21, 22, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38

5 U.S.C. § 706(2).........................................................................................10, 39

*5 U.S.C. § 706(2)(A)..................................................................................10

5 U.S.C. § 706(2)(E)....................................................................................36

28 U.S.C. § 1331..........................................................................................16, 17

28 U.S.C. § 1631..........................................................................................18, 40

28 U.S.C. § 2112(a)......................................................................................6

33 U.S.C. § 1311(a)......................................................................................2

33 U.S.C. § 1311(b)......................................................................................3

33 U.S.C. § 1311(b)(2)(A)............................................................................4

33 U.S.C. § 1311(b)(3)(B)............................................................................4

33 U.S.C. § 1311(d)......................................................................................21, 23

33 U.S.C. § 1314(b)......................................................................................23

33 U.S.C. § 1314(b)(1).................................................................................21

33 U.S.C. § 1314(b)(2)(B)............................................................................4

33 U.S.C. § 1314(g)(1) ................................................................................................ 21, 23

33 U.S.C. § 1314(m)(1)(A) ......................................................................................... 21, 23

33 U.S.C. § 1316(a)(1) .................................................................................................... 3

33 U.S.C. § 1317(b) ........................................................................................................ 3

33 U.S.C. § 1317(b)(2) ................................................................................................. 21, 23

33 U.S.C. § 1317(c) ........................................................................................................ 3

33 U.S.C. § 1317(d) ........................................................................................................ 4

33 U.S.C. § 1342 ............................................................................................................. 4

33 U.S.C. § 1342(a) ........................................................................................................ 3

33 U.S.C. § 1342(a)(1) .................................................................................................... 4

33 U.S.C. § 1369 ........................................................................................................... 11

33 U.S.C. § 1369(b) ...................................................................................................... 29

33 U.S.C. § 1369(b)(1) ......................................................................................... 6, 11, 15

*33 U.S.C. § 1369(b)(1)(E) ................................................................ 6, 11, 12, 13, 16, 17

33 U.S.C. § 1369(b)(2) .................................................................................................. 18

42 U.S.C. § 7607(d)(7)(B) ............................................................................................. 25

Rules

Fed. R. App. P. 18 ..................................................................................................... 12, 13

Fed. R. Civ. P. 12(b)(1) .................................................................................................. 9

Fed. R. Civ. P. 56 ......................................................................................................... 10

Fed. R. Civ. P. 56(c) ..................................................................................................... 10

LCvR. 7(h)(2) .................................................................................................................. 3

Code of Federal Regulations

40 C.F.R. § 125.3(c) .................................................................................................... 4

40 C.F.R. § 423.13(g)(1)(i) ................................................................................... 6, 28

40 C.F.R. § 423.13(h)(1)(i) ................................................................................... 6, 28

40 C.F.R. § 423.13(i)(1)(i) .................................................................................... 6, 28

40 C.F.R. § 423.13(j)(1)(i) .................................................................................... 6, 28

40 C.F.R. § 423.13(k)(1)(i) ................................................................................... 6, 28

40 C.F.R. § 423.16(e) .................................................................................................. 6

40 C.F.R. § 423.16(f) ................................................................................................... 6

40 C.F.R. § 423.16(g) .................................................................................................. 6

40 C.F.R. § 423.16(h) .................................................................................................. 6

40 C.F.R. § 423.16(i) ................................................................................................... 6

Federal Register

59 Fed. Reg. 43,048 (Aug. 22, 1994) ....................................................................... 35

61 Fed. Reg. 28,508 (June 5, 1996) .......................................................................... 35

63 Fed. Reg. 46,332 (Aug. 31, 1998) ........................................................................ 35

75 Fed. Reg. 49,556 (Aug. 13, 2010) .................................................................. 30, 35

76 Fed. Reg. 4780 (Jan. 26, 2011) ...................................................................... 30, 35

76 Fed. Reg. 28,318 (May 17, 2011) ................................................................... 30, 35

80 Fed. Reg. 67,838 (Nov. 3, 2015) ................................................... 3, 4, 6, 23, 28, 29

*82 Fed. Reg. 19,005 (Apr. 25, 2017) ........................................... 1, 4, 6, 7, 8, 23, 24, 25, 27, 37

82 Fed. Reg. 26,017 (June 6, 2017) .............................................................. 8, 20, 25

Other Authorities

Pub.L.1944–46, S. Doc. 248 (1946) ....................................................................... 32, 33

## INTRODUCTION

Section 705 of the Administrative Procedure Act ("APA") broadly empowers an agency to "postpone the effective date of action taken by it, pending judicial review," whenever the agency finds that "justice so requires." 5 U.S.C. § 705. This action nevertheless challenges EPA's decision to postpone, pending judicial review, certain regulatory compliance deadlines for the Steam Electric Effluent Limitations Guidelines and Standards Rule ("ELG Rule" or "Rule"). The Rule is currently pending judicial review in the Fifth Circuit Court of Appeals. Presented with the judicial challenges and petitions for administrative reconsideration of the Rule, EPA decided to conduct a thorough and careful review of the Rule. EPA also determined that in light of approaching compliance deadlines "justice . . . require[d]" the "Stay Notice" challenged here. 82 Fed. Reg. 19,005 (Apr. 25, 2017). Because this Court lacks jurisdiction, it should not reach the merits of Plaintiffs' challenges. Even if it does, however, the Stay Notice should be upheld.

The Stay Notice is a lawful and reasonable exercise of EPA's authority under § 705. The statue imposes extraordinarily broad authority on EPA to provide equitable relief pending judicial review if it finds that "justice so requires." It does not specify factors circumscribing the agency's discretion or otherwise define what circumstances would warrant a stay. EPA reasonably determined that, in the circumstances here, justice required granting petitioners' request to stay the effect of approaching compliance deadlines. In the absence of the Stay Notice, the Rule would require steam electric power plants to meet new, more stringent limits on their effluent discharges as soon as November 1, 2018. To meet these limits, plants would have to incur millions of dollars in capital compliance costs to begin planning for, designing, procuring, installing and constructing new pollution control technologies. It was not arbitrary and capricious for EPA to stay the effect of these compliance deadlines in the face of judicial

challenges and reconsideration petitions that raised questions as to the feasibility and costs of achieving the limits in the Rule and where EPA decided to conduct a thorough review of the Rule, the result of which could be revised limits.  Providing relief from deadlines while EPA's reconsideration process takes its course also avoids compelling the United States to represent EPA's position in litigation on the many substantive questions that are the subject of EPA's nascent review.  This serves the integrity of any future administrative process, and ensures due respect for the prerogative of the executive branch to reconsider the policy decisions of a prior Administration.

In light of the broad authority expressly delegated to EPA in § 705, Plaintiffs' attempt to graft various limits and criteria on EPA's determination of what "justice so requires" is unfounded.  Nowhere does § 705 say that EPA must use the judicially created four-part standard for preliminary injunctions.  To the contrary, § 705 imposes distinct standards on agencies and courts.  Nor is there any merit to Plaintiffs' argument that EPA must give notice and an opportunity to comment prior to issuing a stay.  Section 705 is a free-standing grant of authority to provide equitable relief pending judicial review that does not mention or cross-reference the APA's separate rulemaking provisions.  Finally, Plaintiffs fail to show that EPA erred in construing the statute to permit it to stay specific compliance dates that fall after the initial effective date of the Rule.  Although the Rule took effect on January 4, 2016, the stayed provisions will not take effect until November 1, 2018, at the earliest.

## BACKGROUND AND STATEMENT OF FACTS[1]

### I.      The Steam Electric Effluent Limitations Guidelines Rule

####       A.      The Clean Water Act

The Clean Water Act prohibits the "discharge of any pollutant" by "any person" except as authorized by the Act.  33 U.S.C. § 1311(a).  One of the principal mechanisms for complying with the CWA is through the National Pollutant Discharge Elimination System ("NPDES"), which provides for discharge permits for direct discharges to waters covered by the CWA.  Additionally, indirect dischargers—i.e., those who discharge to publicly owned treatment works ("POTWs")—must comply with pretreatment standards.  Both types of dischargers must comply with certain requirements and conditions established under other provisions of the Act, including technology-based effluent limitations and pretreatment standards.  33 U.S.C. §§ 1311(b), 1317(b), 1342(a); *see generally Tex. Oil & Gas Ass'n v. EPA*, 161 F.3d 923, 927 (5th Cir. 1998).  EPA promulgates nationally applicable technology-based effluent limitations and standards governing the discharge of pollutants from existing sources under 33 U.S.C. §§ 1311(b) and 1317(b).  And it establishes new source performance standards and pretreatment standards for new sources under 33 U.S.C. §§ 1316(a)(1) and 1317(c).[2]

In the ELG Rule, EPA determined appropriate limits and standards based on the Best Available Technology Economically Achievable ("BAT").  80 Fed. Reg. 67,838, 67,841 (Nov. 3,

---

[1]  Where, as here, Plaintiffs seek review of agency action under the APA, review is limited to the administrative record.  *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971); *Camp v. Pitts*, 411 U.S. 138, 142 (1973); *see infra* at 9.  Therefore, consistent with LCvR. 7(h)(2), EPA submits this Background and Statement of Facts with citations to the administrative record in lieu of a separate statement of undisputed material facts.  EPA filed the certified Administrative Record Index on June 13, 2017 (ECF No. 19-2).  Documents in the record that are not published in the Federal Register are identified in this brief by the number in the first column of the certified Administrative Record Index, as "AR#####."

[2]  The new source performance standards and pretreatment standards for new sources promulgated in the ELG Rule were not implicated by EPA's Stay Notice.

2015); 33 U.S.C. § 1311(b)(2)(A).  In so doing, EPA was required to consider "the age of

equipment and facilities involved, the process employed, the engineering aspects of the

application of various types of control techniques, process changes, the cost of achieving such

effluent reduction, non-water quality environmental impact (including energy requirements), and

such other factors as the Administrator deems appropriate."  33 U.S.C. § 1314(b)(2)(B).  The

Agency is afforded considerable discretion in how to weigh these factors in making the ultimate

decision as to what constitutes BAT.  *See, e.g., Weyerhaeuser Co. v. Costle*, 590 F.2d 1011, 1045

(D.C. Cir. 1978).

Once EPA establishes effluent limitations and standards for an industry as a whole, they

are primarily implemented through NPDES permits issued to individual facilities under 33

U.S.C. § 1342.[3]  Pretreatment standards applicable to indirect dischargers are directly

enforceable.  *See* 33 U.S.C. § 1317(d).

**B.**    **The ELG Rule**

EPA promulgated the final ELG Rule on November 3, 2015.  80 Fed. Reg. 67,838.  The

Rule establishes new, more stringent effluent limitations guidelines, performance standards, and

pretreatment standards applicable to several of the effluent wastestreams generated by steam

electric power plants.  *Id.*; 82 Fed. Reg. 19,005.  The limitations and standards in the Rule are

based on a highly technical analysis of availability, effectiveness, and economic achievability of

technologies to limit the target pollutants in the plants' effluent discharges, and a careful

weighing of the other statutory factors, discussed above.  80 Fed. Reg. at 67,841.

---

[3] Where EPA has not established categorical limitations for an industry, EPA and state permitting authorities
establish individual NPDES permit limitations on a case-by-case basis, using their best professional judgment.  *See
id.* §§ 1311(b)(3)(B), 1342(a)(1); 40 C.F.R. § 125.3(c).

C.    Estimated compliance costs of the ELG Rule

As part of the ELG rulemaking, EPA estimated the costs associated with compliance with the Rule's new requirements.  For all applicable wastestreams, EPA assessed the operations and treatment system components, identified equipment and process changes that the plant would likely make to meet the final ELGs, and estimated the cost to implement those changes.  This includes, among other things, the capital costs of installing the technology (based on estimates of the technology selected as representing the level of control) and the operation and maintenance costs of operating the technology.  Technical Development Document ("TDD"), AR12840, at 9-1—9-52.  EPA estimated that the total post-tax compliance costs would be $339.6 million/year.  Regulatory Impact Analysis ("RIA"), AR12842, Table 3-2 (Option D).[4]

The rulemaking record also reflects the initial capital costs that regulated parties would incur in the near term (if a stay were not in place), including purchasing, delivering, and installing pollution control technologies to meet the Rule's effluent limits and standards.  Specifically, plants would incur engineering design costs, costs to acquire equipment, freight shipping costs to transport equipment from manufacturers to the installation site, costs for actions to prepare the site (such as installing concrete foundations and buildings for the new equipment), and construction expenses associated with connecting electrical and piping systems to new equipment.  TDD, AR12840, at 9-3.  EPA estimated post-tax capital costs of $204.4 million/year.  RIA, AR12842, Table 3-2 (Option D).  Although there is a wide degree of variability among the costs particular plants would expend, the average post-tax capital

---

[4]  EPA analyzed both pre-tax and post-tax costs.  Pre-tax costs provide insight on the total expenditures as initially incurred by the plants. Post-tax costs are a more meaningful measure of compliance impact on privately owned for-profit plants, and incorporate approximate capital depreciation and other relevant tax treatments in the analysis. RIA, AR12842, at 3-6.

compliance costs for a plant would be approximately $1.5 million/year.  *See* TDD, AR12840,

Table 9-19 (plants with compliance costs); RIA, AR12842, Table 3-2 (Option D).

> **D.**    **The ELG Rule's compliance deadlines**

Under the ELG Rule, those sources that must obtain NPDES permits must comply with

the new, more stringent limitations as soon as possible beginning November 1, 2018, but no later

than December 31, 2023, as determined by the permitting authority in the NPDES permitting

process.  *See* 40 C.F.R. §§ 423.13(g)(1)(i), (h)(1)(i), (i)(1)(i), (j)(1)(i), and (k)(1)(i).  Sources

subject to pretreatment standards must comply with the new, more stringent limits by November

1, 2018.  *See* 40 C.F.R. §§ 423.16(e), (f), (g), (h), and (i).  In establishing these compliance

deadlines, EPA took into account, among other things, the time that many facilities need to raise

capital, plan and design systems, procure equipment, and construct and then test systems.  80

Fed. Reg. at 67,854.

## II.    Petitions for review of the ELG Rule in the Fifth Circuit

Under the CWA, 33 U.S.C. § 1369(b)(1), certain enumerated actions are subject to

exclusive review in the courts of appeals.  The ELG Rule is among the actions subject to review

under § 1369(b)(1)(E).  Following EPA's promulgation of the ELG Rule, numerous parties,

including several of the plaintiffs in this case, filed seven petitions for review of the Rule under

§ 1369(b)(1)(E), which were consolidated in the Fifth Circuit, under the lead case *Southwestern*

*Electric Power Co. v. EPA*, No. 15-60821, pursuant to 28 U.S.C. § 2112(a); 82 Fed. Reg. at

19,005.[5]  Petitioning groups filed three opening merits briefs, comprising 35,000 words, on

---

[5]  Plaintiffs Clean Water Action, Waterkeeper Alliance, Inc., Environmental Integrity Project, and Sierra Club are petitioners in the Fifth Circuit petitions.  Plaintiff Clean Water Action is also an intervenor in that case.  Other petitioners in that litigation include: Southwestern Electric Power Co., Utility Water Act Group, Union Electric, Inc.

December 5, 2016.  During the course of merits briefing, petitioner Utility Water Act Group

("UWAG") submitted a petition to EPA for administrative reconsideration, raising issues that

overlapped with its claims in the litigation.[6]  *Id.*; UWAG Petition, AR12844.  On April 12, 2017,

just a short time before EPA's merits brief was due to be filed, EPA Administrator Pruitt

announced that he would reconsider the ELG Rule and would issue a stay pending judicial

review under § 705.  82 Fed. Reg. at 19,005; Letter from EPA to Petitioner for Reconsideration

and Stay, AR12849.  To allow time for EPA to undertake a review of the Rule in light of the

petitions, EPA requested a 120-day stay of proceedings in the Fifth Circuit, which the Fifth

Circuit granted.  82 Fed. Reg. at 19,005-06; *see Southwestern Electric Power Co.*, No. 15-60821,

Order, Apr. 24, 2017, Doc. No. 00513964356.  Pursuant to the court's order, EPA will file a

motion to govern further proceedings by August 14, 2017, advising the Fifth Circuit of its plans

for further administrative proceedings to reconsider the Rule.

## III.    The Stay Notice

When EPA announced its reconsideration of the ELG Rule, on April 12, 2017,

Administrator Pruitt also signed the Stay Notice.  82 Fed. Reg. 19,005.  The Stay Notice

postpones the applicable compliance dates for the new, more stringent limits applicable to

existing sources for several wastestreams pending judicial review.  *Id.*  In the Stay Notice, EPA

noted the imminent deadline for its merits brief in the Fifth Circuit litigation.  *See id.*  It also

explained that the administrative petitions for reconsideration raise "sweeping and wide ranging"

objections to the Rule that overlap with issues in the litigation.  *Id.*  In particular, the petitions

---

(dba Ameren Missouri), Duke Energy Indiana, Inc., American Water Works Association, National Association of
Water Companies, and the City of Springfield, Missouri, by and through the Board of Public Utilities.

[6]  A subsequent petition was submitted by the Small Business Administration Advocacy Office ("SBA"), AR12848.

raise issues relating to the feasibility and costs of the new limits.  UWAG Petition, AR12844;

SBA Petition, AR12848.  EPA also noted that it wished to review new information that UWAG

intended to submit, bearing on the feasibility of certain limits in the Rule.  82 Fed. Reg. at

19,005.  In light of the capital expenditures that facilities incurring costs under the Rule will have

to undertake to meet the Rule's approaching compliance deadlines, the pending litigation, and

EPA's reconsideration of the Rule, EPA determined that "justice requires it to postpone the

compliance dates of the Rule that have not yet passed, pending judicial review."  *Id.*

## IV.    EPA's proposed rule to postpone compliance deadlines

The Stay Notice is a temporary measure, to preserve the status quo pending judicial

review.  Thus, on May 25, 2017, EPA signed a notice for publication in the Federal Register,

proposing to postpone (through rulemaking) the same compliance deadlines subject to the Stay

Notice, pending completion of agency reconsideration proceedings.  82 Fed. Reg. 26,017 (June

6, 2017).  As explained in the proposed rule, "[b]ecause Section 705 of the APA authorizes an

Agency to postpone the effective date of an action pending judicial review, EPA is undertaking

this notice-and-comment rulemaking to postpone certain compliance dates in the rule in the

event that the litigation ends, and while the Agency is undertaking reconsideration."  *Id.* at

26,018.  The deadline for submission of written comments for that rulemaking was on July 6,

2017.  In addition, EPA will hold a public hearing to receive in-person comment on the proposed

postponement of compliance deadlines on July 31, 2017.  Posting available at

https://www.epa.gov/eg/steam-electric-power-generating-effluent-guidelines-2015-final-

rule#hearing, last visited July 27, 2017.

V.    **This litigation**

On May 3, 2017, Plaintiffs filed their complaint in this Court challenging the Stay Notice. Plaintiffs assert six claims for relief: (1) failing to make required findings for a stay under 5 U.S.C. § 705; (2) staying the rule for purposes of reconsidering it; (3) staying the rule where the effective date has already passed; (4) staying portions of a rule, while leaving others in effect; (5) failing to provide adequate justification and consider relevant factors; and (6) failing to provide notice and an opportunity for comment.  Compl., ECF Doc. No. 1.

On June 13, 2017, EPA filed a motion to dismiss this case or transfer it to the Fifth Circuit, or, in the alternative, to stay proceedings ("Motion to Dismiss") (ECF No. 18).  On the same date, EPA also filed the certified index to the administrative record (ECF No. 19).  On June 14, 2017, Plaintiffs filed a motion for summary judgment (ECF No. 20).  The Court subsequently consolidated briefing on the Motion to Dismiss and Plaintiffs' motion for summary judgment and established a briefing schedule (ECF No. 23).

## STANDARD OF REVIEW

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), the Court must determine whether the complaint sets forth allegations sufficient to establish jurisdiction over the subject matter of the claims for relief.  Because federal courts are courts of limited jurisdiction and may hear cases only to the extent expressly provided by statute, the first and most fundamental question presented by every case is whether the court has jurisdiction to hear it.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("jurisdiction [must] be established as a threshold matter").  The burden of establishing subject matter jurisdiction rests with the plaintiff.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (it is "to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the

contrary rests upon the party asserting jurisdiction") (citations omitted); *Khadr v. United States*, 529 F.3d 1112, 1115 (D.C. Cir. 2008). Where subject matter jurisdiction does not exist, "the court cannot proceed at all in any cause." *Steel Co.*, 523 U.S. at 94 (internal quotation marks and citation omitted).

With regard to the cross-motions for summary judgment, APA § 706(2) permits a court to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Under the APA, the Court's review is limited to the administrative record compiled and relied on by the agency. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971); *Camp v. Pitts*, 411 U.S. 138, 142 (1973).[7]

Review under the "arbitrary and capricious" standard is "highly deferential" and "presumes the agency's action to be valid." *Envtl. Def. Fund, Inc. v. Costle*, 657 F.2d 275, 283 (D.C. Cir. 1981) (citations omitted). An agency's decision can be set aside "only if the agency relied on factors Congress did not intend it to consider, entirely failed to consider an important aspect of the problem, or offered an explanation that runs counter to the evidence before the agency or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Auto. Ins. Co.*, 463 U.S. 29, 42 (1983) ("*State Farm*"). The federal courts "will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Bowman Transp., Inc. v. Arkansas-Best*

---

[7] Under Rule 56, summary judgment may be granted where "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" show "that there is no dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) & (c). But, where, as here, a case involves review of agency action under the APA, "the Court's role is limited to reviewing the administrative record, so the standard set forth in Rule 56(c) does not apply." *Air Transport Ass'n of Am., Inc. v. Nat'l Mediation Bd.*, 719 F. Supp. 2d 26, 32 (D.D.C. 2010).

*Freight System, Inc.*, 419 U.S. 281, 286 (1974).  Because this case involves the interplay of the

APA and, in some senses, the CWA, EPA must bring to bear its special expertise and

knowledge, and therefore EPA's statutory interpretations merit some deference.  *United States v.*

*Mead Corp.*, 533 U.S. 218, 234 (2001) (agency action, whatever its form, is due some deference,

given the "specialized experience and broader investigations and information" available to the

agency) (citing *Skidmore v. Swift Co.*, 323 U.S. 134, 139 (1944)).

## ARGUMENT

**I.      The Court lacks subject-matter jurisdiction.**

The CWA gives the courts of appeals exclusive jurisdiction over certain actions taken by

EPA under the Act.  33 U.S.C. § 1369(b)(1).  The Supreme Court has made clear that when

§ 1369 applies, "it is the *exclusive* means of challenging actions covered by the statute."  *Decker*

*v. Nw. Envtl. Def. Ctr.*, 568 U.S. 597, 608 (2013) (emphasis added).  It is undisputed that the

ELG Rule is an action subject to review under § 1369(b)(1)(E) and, indeed, some of the

Plaintiffs in this action have invoked appellate jurisdiction under § 1369(b)(1)(E) by petitioning

for review of the final ELG Rule.  *See supra* n.3.  Under the D.C. Circuit's holding in

*Telecommunications Research and Action Ctr. v. FCC* ("*TRAC*"), "any suit seeking relief that

might affect the Circuit Court's future jurisdiction is subject to the *exclusive* review of the Court

of Appeals."  750 F.2d 70, 75 (D.C. Cir. 1984) (emphasis in original).  Plaintiffs' challenge to

the Stay Notice may affect the Fifth Circuit's jurisdiction, and thus *TRAC* dictates that

jurisdiction to review the Stay Notice resides not in this Court, but in the court of appeals under

§ 1369(b)(1)(E).  Even if *TRAC* does not apply, the Stay Notice is so tied up with matters within

the Fifth Circuit's jurisdiction that any challenges to the Stay Notice are properly within that

court's ancillary jurisdiction.

A.    **The Fifth Circuit has jurisdiction under § 1369(b)(1)(E) and *TRAC*.**

Under the D.C. Circuit's decision in *TRAC* and its progeny, the Stay Notice is subject to

exclusive review in the Fifth Circuit pursuant to § 1369(b)(1)(E).  In *TRAC*, the D.C. Circuit

considered the question: where a statute commits final agency action to review by the courts of

appeals, does that court have jurisdiction to hear suits seeking relief that would affect its future

statutory jurisdiction?  The court, in a ruling considered and approved by the entire court, held

that it does.  750 F.2d at 75 n.24.  Petitioners in that case sought to compel the Federal

Communications Commission ("FCC") to decide certain matters that were pending before the

agency, arguing that the FCC had unreasonably delayed in doing so.  Under the relevant judicial

review statute, exclusive jurisdiction to review orders of the FCC is vested in the appellate

courts.  The court reasoned that because its future jurisdiction to review the merits might be

defeated by the lack of agency action, the circuit court should also be the forum to resolve claims

that an agency has unreasonably delayed in taking action reviewable in the circuit court.  *Id.* at

76 (citations omitted).

Although *TRAC* concerned an action seeking to compel an agency to perform a

mandatory statutory duty unreasonably delayed, the *TRAC* principles apply with equal, if not

greater, force here, since this challenge implicates both the present *and* future jurisdiction of the

court of appeals.  First, this case directly implicates the Fifth Circuit's *current* authority to issue a

stay pending judicial review.  By definition, the Stay Notice is inextricably tied to the Fifth

Circuit litigation and maintaining the status quo pending that court's review.  Rule 18 of the

Federal Rules of Appellate Procedure requires an applicant for a stay of an agency rule pending

judicial review to request one from the agency before moving the court for such relief because,

as explained in the Advisory Committee Notes, § 705 "confers general authority on both

12

agencies and reviewing courts to stay agency action pending review." Since the Fifth Circuit's jurisdiction to review the ELG Rule necessarily includes its authority under § 705 to issue a stay of the rule pending judicial review, it should also encompass challenges to a stay issued by the agency under the same provision, as asking the agency for a stay is a prerequisite to any request for a stay by the court of appeals under Fed. R. App. 18. Thus, this Court's consideration of challenges to the Stay Notice necessarily risks having two courts ruling on the same relief.

Second, this case also implicates the Fifth Circuit's *future* exclusive jurisdiction to review the merits of the ELG Rule. Under Plaintiffs' theory of the case, the Stay Notice is invalid because, among other reasons, EPA did not evaluate the likelihood of success on the merits and failed to provide an adequate rationale for the Stay Notice. *See* Compl. ¶¶ 59, 83; Plfs. Mem. in Support of Summ. J. ("Plfs. Mem.") (ECF No. 20) Arg. II, V. However, under § 1369(b)(1)(E), the Fifth Circuit has exclusive jurisdiction over the merits of the ELG Rule challenges.

Other D.C. Circuit decisions since *TRAC* recognize that its holding extends to suits beyond actions for unreasonable delay. In *International Union, United Mine Workers of America v. Department of Labor*, 358 F.3d 40, 43 (D.C. Cir. 2004), the court found the reasoning in *TRAC* supported exclusive appellate jurisdiction over an action challenging an agency's withdrawal of a proposed rule that, if finalized, would be subject to exclusive appellate jurisdiction because the "withdrawal of a proposed rule defeats th[e] [circuit] [c]ourt's prospective jurisdiction." Indeed, the court found that "[i]t would be anomalous [] for the district court to review claims of arbitrary and capricious withdrawal while the court of appeals entertains claims of unreasonable delay." *Id.* So too here. If a withdrawal of a proposed rule is within a circuit court's exclusive jurisdiction to hear, then an action staying that rule should be,

as well.  Both actions clearly implicate the court of appeals' exclusive jurisdiction over the underlying rule and thus, under *TRAC*, must be heard in the circuit court.

The decision in *Sierra Club v. Jackson*, 813 F. Supp. 2d 149 (D.D.C. 2011), which reached the opposite conclusion regarding district court jurisdiction to review a § 705 stay of a final action that is subject to exclusive appellate review, is not binding on this Court and incorrectly decided the jurisdictional issue.  That court simply ignored or overlooked the fact that § 705 gives both the agency and the circuit court authority to issue a stay pending judicial review, and thus to subject an agency stay to review by a district court indeed intrudes on an issue within the circuit court's exclusive jurisdiction.  *Id.* at 162 ("nothing that happens here will affect the court of appeals' jurisdiction over the pending petitions for review").

Further, *Sierra Club* incorrectly concluded that district court review would not interfere with the appellate court's exclusive jurisdiction because "the Court will give deference to EPA's 'ultimate conclusion on the substantive merit of its rules.'"  *Id.* at 161 (citation omitted); *see also id* at 160.  This reasoning merely states the applicable standard of review for agency action on the merits; the court did not further explain its reasoning, and in particular did not elaborate on how granting "deference" to *EPA* solves the underlying problem presented by two separate *courts* both considering the merits of the same rule, especially where only *one* of those courts has exclusive jurisdiction to review the merits of the rule.  Like the plaintiffs in *Sierra Club*, Plaintiffs in this case challenge the substantive rationale for the Stay Notice, Compl. ¶ 83, which is inextricably tied up with review of the pending Fifth Circuit challenges to the ELG Rule. Thus, *Sierra Club's* reasoning is unpersuasive and should not be followed here.

Moreover, the court in *Sierra Club* relied on case law that is inapposite here.  The court cited *In re Natural Resources Defense Council*, 645 F.3d 400, 405 (D.C. Cir. 2011), for the

proposition that *TRAC* does not apply in circumstances where the basis for a circuit court's jurisdiction relies on a speculative chain of events. There is nothing speculative about the Fifth Circuit's current jurisdiction over the ELG Rule, which includes the authority to entertain requests to stay the rule pending judicial review: that case is pending before the Fifth Circuit right now. Therefore, this Court should decline to follow the holding in *Sierra Club*, 813 F. Supp. 2d at 162, regarding the applicability of *TRAC* in that case. Because *TRAC* applies to Plaintiffs' challenge to the Stay Notice, this Court lacks jurisdiction.

**B.     Even if *TRAC* does not apply, the Stay Notice is an ancillary matter well within the Fifth Circuit's jurisdiction over the ELG Rule.**

The D.C. Circuit has held that, in cases governed by a specialized statutory review provision, like § 1369(b)(1), "questions ancillary or incidental to, or growing out of, the main action … may be taken cognizance of by the court and determined, since such jurisdiction is in aid of its authority over the principal matter." *Morrow v. District of Columbia*, 417 F.2d 728, 737-38 (D.C. Cir. 1969). Thus, in *American Iron and Steel Institute v. EPA*, 115 F.3d 979, 986 (D.C. Cir. 1997), the D.C. Circuit found that it had jurisdiction to consider challenges to parts of a CWA rule that were not expressly identified in § 1369(b)(1), but were otherwise ancillary to the court's review of agency action that clearly was within its jurisdiction under § 1369(b)(1). The court reasoned that, given the technical nature of the rule and the interest in assuring coherent review of all issues related to the same agency action, the court could properly assert ancillary jurisdiction over those matters that were not expressly within § 1369(b)(1)'s grant of jurisdiction. *Am. Iron and Steel Inst.*, 115 F.3d at 986.

For the same reasons as those expressed in *American Iron and Steel Institute*, the Fifth Circuit is the proper forum for Plaintiffs' challenge to the Stay Notice because it involves "questions ancillary to, or growing out of" the challenges to the ELG Rule currently pending in

15

that court.  115 F.3d at 986 (quoting *Morrow*, 417 F.2d at 737-38).  As discussed above, it makes little sense for this Court to consider Plaintiffs' challenge to the Stay Notice, where the Fifth Circuit is the sole forum with jurisdiction over affirmative requests for a stay of the ELG Rule pending judicial review, as well as the sole forum with jurisdiction over the merits of the ELG Rule.

Moreover, as a practical matter, the Fifth Circuit will soon be presented with deciding any procedural issues tied up with EPA's ongoing administrative proceedings on reconsideration of the ELG Rule, and therefore is the forum more "capable of treating the case coherently."  *Am. Iron and Steel Inst.*, 115 F.3d at 986 (citations omitted).  The Stay Notice is just one action in EPA's ongoing administrative proceedings on reconsideration and that court will necessarily have to consider the procedural implications of the reconsideration proceedings on the merits challenges.  Having one court consider all of the issues related to the substantive and procedural aspects of the ELG Rule and related reconsideration proceedings serves the interests of judicial economy and uniformity.  *See id*.

### C.   Jurisdiction under § 1369(b)(1)(E) cuts off jurisdiction under the federal question statute.

Knowing that CWA § 1369(b)(1)(E) vests jurisdiction to review ELGs in the courts of appeals, Plaintiffs try to assert jurisdiction in this Court under the federal question statute, 28 U.S.C. § 1331.  But, it is well-settled that § 1331 does not provide jurisdiction where, as here, Congress has specified a specialized judicial-review procedure for agency action.[8]  "[A] statute

---

[8]  While the APA provides a waiver of sovereign immunity for suits against the United States, it is "not a jurisdiction-conferring statute."  *Oryszak v. Sullivan*, 576 F.3d 522, 524 (D.C. Cir. 2009) (internal quotations and citation omitted).  Rather, in cases arising under the APA, subject matter jurisdiction is asserted under the federal question statute, which establishes subjects that are within the jurisdiction of federal courts to entertain ("civil actions arising under the Constitution, laws, or treaties of the United States").  28 U.S.C. § 1331.

which vests jurisdiction in a particular court cuts off original jurisdiction in other courts in all

cases covered by that statute." *TRAC*, 750 F.2d at 77 (citations omitted).[9]  The Supreme Court

has expressly stated that where § 1369(b)(1) applies, "it is the exclusive means of challenging

actions covered by the [CWA]." *Decker*, 568 U.S. at 608; *see also Maier v. EPA*, 114 F.3d 1032,

1036-37 (10th Cir. 1997) (recognizing same).  Because jurisdiction to review the Stay Notice is

vested in the courts of appeals under § 1369(b)(1), this Court lacks jurisdiction.

It is of no relevance to the jurisdictional analysis that the Stay Notice was issued under

APA § 705, as opposed to the CWA.  *Contra Sierra Club v. Jackson*, 813 F. Supp. 2d at 158-

160.  Jurisdiction to consider an agency action pursuant to a specialized judicial review statute,

like 33 U.S.C. § 1369(b)(1), encompasses review of related agency action taken under another

statute, even if independent review of such action would be in the district court pursuant to the

APA and the federal question statute.  *See, e.g., City of Tacoma, Washington v. F.E.R.C.*, 460

F.3d 53, 76 (D.C. Cir. 2006); *accord Defenders of Wildlife v. EPA*, 420 F.3d 946, 956 (9th Cir.

2005) (in review of EPA decision, court of appeals has jurisdiction to consider adequacy of

biological opinion on which EPA relied), *rev'd and remanded on other grounds, Nat'l Ass'n of

Home Builders v. Defs. of Wildlife*, 551 U.S. 644 (2007).

Because jurisdiction to review the Stay Notice lies in the circuit court under

§ 1369(b)(1)(E), this Court lacks jurisdiction under 28 U.S.C. § 1331.

**D.    This Court should dismiss the action or transfer it to the Fifth Circuit.**

Because this Court lacks jurisdiction over Plaintiffs' claims, dismissal is an appropriate

remedy.  Plaintiffs will not be prejudiced by dismissal.  The period for filing petitions for review

---

[9] *See also Whitney Nat'l Bank v. Bank of New Orleans & Trust Co*., 379 U.S. 411 (1965) (where Congress has enacted a specific statutory scheme of review, that mode must be adhered to notwithstanding an express command of exclusiveness).

of the Stay Notice does not close until August 23, 2017.  33 U.S.C. § 1369(b)(2).  If the Court

dismisses Plaintiffs' action, Plaintiffs may file a petition for review of the Stay Notice.

Alternatively, the Court may transfer this action to the Fifth Circuit under 28 U.S.C.

§ 1631, so that it may be consolidated with the Fifth Circuit petitions for review of the ELG

Rule.  Under § 1631, a court has authority to transfer a case if: "(1) the court would have been

able to exercise jurisdiction on the date that it was filed in the district court; (2) the district court

lacked jurisdiction over the case; and (3) the transfer is in the interests of justice."  *Acevedo-*

*Carranza v. Ashcroft*, 371 F.3d 539, 542 (9th Cir. 2004).  The Fifth Circuit had jurisdiction on

the date that this action was filed, on May 3, 2017.  Where, as here, a district court lacks

jurisdiction by virtue of *TRAC*, courts have recognized that transfer under § 1631 is appropriate.

*See, e.g., TRAC*, 750 F.2d at 79 n.37; *Jamison v. F.T.C.*, 628 F. Supp. 1548, 1552 & n.4 (D.D.C.

1986).  If this Court finds that it is in the interest of justice to do so, it may transfer this case to

the Fifth Circuit instead of dismissing it.[10]

## II.    The Court alternatively may stay this case pending completion of EPA's administrative proceedings.

Instead of deciding to dismiss or transfer the case at this time, the Court may decide to

stay it, pending the ongoing agency reconsideration proceedings.  While subject-matter

jurisdiction is a threshold issue that must be decided before this Court proceeds to the merits, the

Court has leeway "to choose among threshold grounds for denying audience to a case on the

merits."  *Seneca Nation of Indians v. U.S. Dep't of Health & Human Servs.*, 144 F. Supp. 3d 115,

118–19 (D.D.C. 2015) (citation and internal quotation marks omitted).  In particular, "[a] trial

---

[10]  It also bears noting that most of the Plaintiffs here already have petitions pending or are intervenors in the Fifth Circuit challenge to the ELG Rule and will have the opportunity to respond to EPA's forthcoming motion to govern future proceedings, due in the Fifth Circuit on August 14, 2017.

court has broad discretion to stay all proceedings in an action pending the resolution of independent proceedings elsewhere." *Hussain v. Lewis*, 848 F. Supp. 2d 1, 2 (D.D.C. 2012) (citation and internal quotation marks omitted); *Landis v. North Am. Co*., 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."). And courts often stay proceedings where, as here, separate independent proceedings are pending before the agency. *E.g., Am. Petroleum Inst. v. EPA*, 683 F.3d 382, 386–87 (D.C. Cir. 2012) (challenge to regulation of hazardous secondary materials under RCRA rendered unripe by agency proposal for new rulemaking); *Seneca Nation*, 144 F. Supp. 3d at 118–19 (motion to stay pending agency board decision represented non-jurisdictional threshold basis for denying audience to the case on the merits).

A stay of judicial proceedings pending further administrative action by the agency comports with fundamental principles of ripeness. The ripeness doctrine generally deals with when a federal court can or should decide a case. Part of the doctrine is subsumed into the Article III requirement of standing, which requires a petitioner to allege *inter alia* an injury-in-fact that is "imminent" or "certainly impending." *See Nat'l Treasury Emps. Union v. United States,* 101 F.3d 1423, 1427–28 (D.C. Cir. 1996). Even if a case is constitutionally "ripe," though, there may also be "prudential reasons for refusing to exercise jurisdiction." *Nat'l Park Hospitality Ass'n v. Dep't of Interior,* 538 U.S. 803, 808 (2003) (citation and internal quotation marks omitted). "In the context of agency decision making, letting the administrative process run its course before binding parties to a judicial decision prevents courts from 'entangling themselves in abstract disagreements over administrative policies, and … protect[s] the agencies from judicial interference' in an ongoing decision-making process." *Am. Petroleum Inst.*, 683

19

F.3d at 386–87 (citing *Abbott Labs. v. Gardner,* 387 U.S. 136, 148 (1967)).  Postponing review

can also conserve judicial resources, and it "comports with [a court's] theoretical role as the

governmental branch of last resort."  *Nat'l Treasury Emps. Union,* 101 F.3d at 1431.

> As the D.C. Circuit observed:
>
> Courts decline to review "tentative" agency positions because doing so "severely
> compromises the interests" the ripeness doctrine protects: "The agency is denied
> full opportunity to apply its expertise and to correct errors or modify positions in
> the course of a proceeding, the integrity of the administrative process is
> threatened by piecemeal review of the substantive underpinnings of a rule, and
> judicial economy is disserved because judicial review might prove unnecessary if
> persons seeking such review are able to convince the agency to alter a tentative
> position."

*Am. Petroleum Inst.*, 683 F.3d at 387 (citation and internal quotations omitted).

By definition, the Stay Notice is a temporary measure intended to preserve the status quo

pending judicial review.  Because a stay under § 705 endures only pending judicial review, EPA

has initiated notice-and-comment rulemaking to postpone the compliance deadlines subject to

the APA § 705 stay at issue in this case, pending completion of any additional agency

rulemaking proceedings.  82 Fed. Reg. at 26,017.  The ongoing rulemaking to postpone the ELG

Rule compliance deadlines presents Plaintiffs the opportunity to "convince the agency to alter

[its] tentative position" reflected in the § 705 stay.  *Pub. Citizen Health Research Grp. v. FDA,*

740 F.2d 21, 30–31 (D.C. Cir. 1984).  If the Plaintiffs fail to persuade EPA to change course and

EPA finalizes the rule to postpone the compliance deadlines, this case may very well become

moot.  *Am. Petroleum Inst. v. EPA*, 683 F.3d 382, 387 (D.C. Cir. 2012) (staying litigation when

"[t]he proposed rule would wholly eliminate" the issues in this litigation.).  Allowing the

administrative process to run its course will allow EPA to "crystalliz[e] its policy before that

policy is subjected to judicial review," *Wyo. Outdoor Council v. U.S. Forest Service*, 165 F.3d

43, 49 (D.C. Cir. 1999), and avoid "inefficient" and unnecessary "piecemeal review," *Pub.*

*Citizen Health Research*, 740 F.2d at 30 (citation and internal quotation marks omitted).

To outweigh these "institutional interests in the deferral of review," any hardship caused

by that deferral must be "immediate and significant." *Devia v. Nuclear Regulatory Comm'n*, 492

F.3d 421, 427 (D.C. Cir. 2007) (citation and internal quotation marks omitted).  Because the Stay

Notice effects only a temporary stay of compliance deadlines pending judicial review (that

would not begin to take effect until November 1, 2018 at the earliest), the harm Plaintiffs allege

is hypothetical, future harm.  If EPA finalizes its proposal to postpone the compliance deadlines,

Plaintiffs will have the opportunity to seek judicial review of any final action EPA takes.  If EPA

does not finalize the postponement rule and the Stay Notice remains in effect, Plaintiffs can

reinstitute proceedings in this case.  Thus, the hardship to Plaintiffs caused by deferral of review

does not outweigh the interests in allowing the agency proceedings to run their course.

III.    **The Stay Notice is a lawful and reasonable exercise of EPA's discretion under APA § 705.**

Even if the Court reaches the merits, Plaintiffs' summary judgment motion should be

denied and EPA's cross-motion for summary judgment granted because the Stay Notice is a

valid and reasonable exercise of EPA's authority under APA § 705.  Section 705 states:  "When

an agency finds that justice so requires, it may postpone the effective date of action taken by it,

pending judicial review."  5 U.S.C. § 705.  The Administrator reasonably concluded that justice

required a stay, pending judicial review, of certain compliance deadlines in the Rule, in light of

the pending Fifth Circuit litigation (where EPA's merits brief deadline was imminent) and

recently submitted requests to the new EPA Administrator for reconsideration of the Rule.  EPA

has authority under the Clean Water Act to revise effluent limits and standards, 33 U.S.C.

§§ 1311(d), 1314(b)(1), (m)(1)(A), (g)(1), 1317(b)(2), as well as inherent authority to reconsider

past decisions.  It reasonably determined that it would be unfair to require plants to incur millions of dollars in compliance costs for provisions of the Rule that might change following agency reconsideration and any attendant rulemaking.

Contrary to Plaintiffs' arguments, EPA properly construed "effective date" in § 705 to include regulatory compliance dates that had not yet passed.  Plaintiffs also err in arguing EPA must use the judicially made four-part test that courts use for preliminary injunctions or follow APA § 553(c) notice-and-comment procedures before issuing the Stay Notice.  Nowhere does § 705 say that EPA must use the judicially created four-part framework to grant a stay under that provision, nor does it impose any requirements for notice and comment.

### A.    The Stay Notice comports with § 705.

Section 705 imposes two conditions on EPA's authority to stay the effectiveness of a rule: (1) the agency must find that "justice so requires"; and (2) the stay must be "pending judicial review."  *Id.*  The Stay Notice meets both of these conditions.  Plaintiffs' arguments that EPA's rationale is inadequate because it did not undertake a weighing of costs and benefits of the ELG Rule fails.

### 1.    EPA reasonably concluded that "justice so requires" a stay of compliance deadlines.

Section 705 does not specify what factors an agency must consider in determining whether "justice so requires" a stay pending judicial review.  EPA reasonably concluded that justice requires a stay because it would be unfair to require plants to expend millions of dollars in capital expenditures to comply with provisions of the Rule that are challenged as unlawful and EPA is reconsidering.  EPA's decision is well within Congress's broad grant of authority in § 705.

The Rule applies new and more stringent effluent limitations to several wastestreams at regulated plants "as early as November 1, 2018, for direct dischargers and by November 1, 2018, for indirect dischargers," and regulated parties must start incurring capital costs now to comply. 82 Fed. Reg. at 19,005; 80 Fed. Reg. at 67,854 (explaining that compliance deadlines included in the rule "provide the time that many facilities need to raise capital, plan and design systems, procure equipment, and construct and then test systems").  The record reflects that plants could be required to expend millions of dollars in capital costs to install control technologies to meet the Rule's requirements.  *See supra* Background and Statement of Facts, at I.C.  Although EPA did not specify the capital costs on a per plant basis and the costs will vary for particular plants, the average per plant cost is $1.5 million.  *Id.*  EPA reasonably determined that it was not in the interest of justice to require these expenditures when petitions challenging the Rule are pending and EPA had decided to reconsider the Rule.  82 Fed. Reg. at 19,005.

This is especially so because agencies have inherent authority to reconsider past decisions and to revise, replace or repeal a decision to the extent permitted by law and supported by a reasoned explanation.  *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009); *State Farm*, 463 U.S. at 42.  *See also Nat'l Ass'n of Home Builders v. EPA*, 682 F.3d 1032, 1038 & 1043 (D.C. Cir. 2012) (a revised rulemaking based "on a reevaluation of which policy would be better in light of the facts" is "well within an agency's discretion," and "'[a] change in administration brought about by the people casting their votes is a perfectly reasonable basis for an executive agency's reappraisal'" of its policy choices) (citations omitted).  Particularly relevant here, the CWA expressly authorizes EPA to revise effluent limits and standards.  33 U.S.C. §§ 1311(d), 1314(b), (g)(1), (m)(1)(A), 1317(b)(2).  If EPA determines that any substantive revisions to the ELG Rule provisions are warranted, it will undertake further

rulemaking proceedings that will provide notice of the proposed changes and a full opportunity for interested parties to comment.

### 2.    The Stay Notice is pending judicial review in the Fifth Circuit.

The Stay Notice also satisfies § 705 because EPA issued it "pending judicial review."  5 U.S.C. § 705; 82 Fed. Reg. 19,005.  As EPA explained in the Stay Notice:

- the Rule is subject to several petitions for review in the Fifth Circuit;

- EPA had an imminent deadline of May 4, 2017, to file its merits brief in the Fifth Circuit;

- certain petitioners petitioned the new EPA Administrator to reconsider the Rule, raising "wide-ranging and sweeping objections" to the rule that "overlap with the claims in the ongoing litigation";

- EPA had decided to grant that petition; and

- regulated parties would incur compliance costs in the absence of a stay.

82 Fed. Reg. at 19,005.

Plaintiffs' contention that the Stay Notice improperly relied on EPA's decision to reconsider the Rule is flawed for several reasons.  First, as shown above, EPA squarely cited the Fifth Circuit litigation in its reasons for issuing the stay.  Indeed, the pending judicial challenges underlie both the reconsideration and the stay.  Thus, EPA clearly articulated a connection between the pending judicial review and the stay of compliance deadlines.  Moreover, EPA acknowledges that the stay will only remain in effect pending the litigation.  It is precisely because the § 705 Stay Notice only effects a temporary stay pending judicial review in the Fifth Circuit that EPA has undertaken notice-and-comment rulemaking to amend the ELG Rule to

24

postpone various compliance deadlines until the reconsideration is complete.  82 Fed. Reg. at 26,018.

Further, that EPA has also decided to reconsider the Rule does not render the Stay Notice unjust or untethered from the litigation.  EPA noted in the decision document the "sweeping and wide-ranging objections" raised in the reconsideration petitions, which overlap with issues in the litigation.  82 Fed. Reg. at 19,005.  Staying the compliance deadlines and the Fifth Circuit litigation avoids compelling the new Administration to take positions on the many issues in the litigation before those positions have crystallized.  On April 12, 2017, when EPA signed the Stay Notice, EPA faced an impending May 4, 2017 deadline to file its merits brief.  EPA decided to undertake reconsideration of the Rule and sought an abeyance of that litigation to avoid taking positions on issues that it was still reviewing and before it could complete an open and transparent rulemaking process.  EPA also sought to avoid entangling the court in resolution of issues that may be revisited during the reconsideration process.  In these circumstances, it cannot be said that the Stay Notice is not based on the pending judicial challenges.

The decision in *Sierra Club v. Jackson*, 833 F. Supp. 2d 11, 34 (D.D.C. 2012), is inapposite.  As an initial matter, that case involved a rule promulgated under the Clean Air Act, which has a provision authorizing EPA to issue three-month stays pending reconsideration.  *See* 42 U.S.C. § 7607(d)(7)(B).  The court in that case concluded that "EPA cannot use Section 705 of the APA to stay the effectiveness of its rules in order to avoid the three-month limitation on stays under the Clean Air Act simply because litigation in the court of appeals *happens to be pending*."  *Sierra Club*, 833 F. Supp. 2d at 33-34.[11]  Here, the underlying Rule was promulgated

_____

[11]  To the extent *Sierra Club* could be read to mean that the Clean Air Act stay provision, 42 U.S.C. § 7607(d)(7)(B), creates a limitation on an agency's authority under § 705 in Clean Air Act cases, it is wrong and not binding precedent in the D.C. Circuit.  In *Mexichem Specialty Resins, Inc. v. EPA*, the D.C. Circuit expressly

under the CWA, which has no corresponding three-month stay provision and thus the rationale of *Sierra Club* simply does not apply here.  Moreover, the court found in that case that EPA's stay decision merely "references in passing the litigation" and "makes no effort to ground the stay on the existence or consequences of the pending litigation."  *Id.* at 33.  As discussed above, the Stay Notice plainly demonstrates a link to the pending Fifth Circuit litigation.

Plaintiffs' argument also fails because it is based on the faulty notion that EPA must confess error before it can issue a stay under § 705.  As noted, EPA has broad discretion to consider the relevant statutory factors and "how much weight to give each factor."  *Weyerhauser Co.*, 590 F.2d at 1045.  There may well be more than one policy outcome that comports with the statute.  The new EPA Administrator therefore has discretion to come to a different result than reflected in the Rule.  EPA should not have to confess legal error to justify a stay under § 705 because doing so would potentially compromise its litigating position.  *See infra* at 33-35.

### 3.  EPA was not required to weigh the compliance costs against the estimated benefits of the Rule to issue the Stay Notice.

EPA was not required to weigh the costs of compliance against the estimated benefits of the ELG Rule, as Plaintiffs (and amicus curiae) urge the Court to require.[12]  First, § 705 does not specify the factors that EPA must consider in determining whether a stay is warranted, indicating that Congress intended to give EPA broad discretion to determine the relevant factors.  EPA

---

acknowledged that the issue of whether the Clean Air Act stay provision creates a limit on § 705 (or other) stay authority in Clean Air Act cases is unresolved, and Judge Kavanaugh, in dissent, expressly stated his view that § 7607(d)(7)(B) does not create such a limitation.  787 F.3d 544, 558 (D.C. Cir. 2015); *id.* at 562 (Kavanaugh, J. dissenting).

[12]  In support of their motion, Plaintiffs rely on two declarations that purport to analyze the forgone environmental benefits of EPA's decision to stay the compliance deadlines of the ELG Rule.  These declarations are not part of the administrative record and therefore are outside of the proper scope of review under the APA.  *See supra* at 9 & n5.  Accordingly, the Court should not consider them.  *Hill Dermaceuticals, Inc. v. Food & Drug Admin.*, 709 F.3d 44, 47 (D.C. Cir. 2013) (upholding district court refusal to consider extra-record declarations).

based its decision on compliance costs that regulated entities would begin to incur now in the absence of a stay.

Section 705 empowers EPA to stay a rule pending judicial review.  In issuing the Stay Notice here, EPA does not purport to effect any changes to the provisions of the ELG Rule itself. If EPA determines, in connection with the reconsideration proceedings, that changes to the ELG Rule are warranted, it will conduct additional rulemaking proceedings, including providing notice and an opportunity to comment.  In that connection, it bears noting again that the relevant CWA provisions that govern EPA in the promulgation of effluent limitations and standards give EPA significant discretion to consider the applicable statutory factors and to determine "how much weight to give each factor."  *See, e.g., Weyerhaeuser*, 590 F.2d at 1045.  EPA was aware of the benefits of the Rule (which are in the administrative record for the stay) and that those benefits had not yet fully accrued because of the future compliance dates in the Rule.  It reasonably deferred a full analysis of the relevant factors to its proceedings on reconsideration of the substantive provisions of the Rule.

**B.**      **Section 705 permits agencies to postpone one or more compliance dates in a rule.**

Plaintiffs' argument that EPA cannot postpone the ELG Rule because the January 4, 2016 effective date has already passed (Plfs. Mem. 28) relies on an overly restrictive interpretation of "effective date."  EPA reasonably concluded that certain compliance dates in the ELG Rule that had not yet passed are within the meaning of "effective date" under § 705 and therefore subject to its authority to stay.  82 Fed. Reg. at 19,005.  EPA's determination involves the interplay of § 705, the CWA, and the ELG Rule.  Because EPA must bring to bear its special expertise and knowledge about the statute it administers and its own rule, EPA's decision that the compliance deadlines fit within "effective date" merits deference.  *United States v. Mead Corp.*, 533 U.S.

27

218, 234 (2001) (agency action, whatever its form, is due some deference, given the "specialized

experience and broader investigations and information" available to the agency) (citing

*Skidmore*, 323 U.S. at 139).

Under § 705, EPA may stay "the effective date of *action taken by it*."  5 U.S.C. § 705

(emphasis added).  Although the term "effective date" is not defined in the APA, its meaning

may be understood from the words around it.  The APA defines the term "agency action"

broadly as "the whole or a *part*" of any agency rule, order, license, or sanction, relief, or the

equivalent or denial thereof, or the failure to act," 5 U.S.C. § 551(13) (emphasis added); *see also*

*id.* § 701(b)(2) (cross-referencing § 551).  Because an agency action may have more than one

part, it is reasonable to read effective date to include any single date or multiple dates when those

parts of the action may become effective.  Indeed, it is not unusual for a rule to consist of

numerous regulatory provisions, some of which may have separate compliance dates upon which

specific obligations become effective.

For example, the ELG Rule establishes an effective date of January 4, 2016.  80 Fed.

Reg. 67,838.  This is the earliest date effluent limits and standards in the Rule may be

incorporated into permits.  The Rule also contains additional later compliance deadlines,

associated with specific limits and standards in the regulations.  *See* 40 C.F.R. §§ 423.13(g)(1)(i),

(h)(1)(i), (i)(1)(i), (j)(1)(i), and (k)(1)(i).  These deadlines reflect the dates by which the regulated

plants must comply with the specific parts of EPA's action.  Because the compliance deadlines

addressed by the stay reflect the dates when specific parts of the ELG Rule take effect, they fit

comfortably within the meaning of "effective date" in § 705.

Plaintiffs' argument that § 705 must be read strictly to mean the January 4, 2016 effective

date specified in the rule preamble is not compelled by the statute.  Plaintiffs' contention that

each agency action has only one effective date because § 705 uses the term "effective date" in

the singular (Plfs. Mem. 30) fails to read the term in context and ignores the meaning of "agency

action."  It also ignores the express purpose of § 705: to enable an agency to stay agency action

pending judicial review whenever "justice so requires."  The power to stay the "effective date of

action taken by [the agency]" must logically include later compliance deadlines that occur

beyond any initial effective date because those deadlines reflect the date when regulated parties

are required to bring their conduct into compliance and therefore the effects of the agency action

are felt.

Plaintiffs' interpretation also makes little practical sense because it would mean that an

agency can only stay the effectiveness of an entire rulemaking, but cannot determine that "justice

requires" a more limited stay of only part of its action.  Nothing in the APA requires this result.

To the contrary, § 705's broad grant of authority to postpone an action whenever "justice so

requires" counsels against such a narrow reading of its text.  As discussed, EPA reasonably

concluded that justice requires postponing the compliance deadlines that have not passed to

avoid having regulated parties potentially needlessly expend capital costs on compliance with

provisions of the Rule that EPA is considering revising.

Under Plaintiffs' interpretation, § 705's grant of authority to postpone the effectiveness

of a rule "pending judicial review" would have little utility.  Under 5 U.S.C. § 553(d), an action

may have an initial "effective date" as early as 30 days after the action is published, but, in many

instances, a party may seek judicial review well beyond that date.  For example, while the ELG

Rule became effective on January 4, 2016, the period for filing petitions for review of the Rule

did not run until March 16, 2016.  *See* 33 U.S.C. § 1369(b) (requiring petitions for review of

effluent limitations to be filed within 120 days); 80 Fed. Reg. at 67,838 (specifying November

17, 2015, as the date the ELG Rule was issued for purposes of 33 U.S.C. § 1369(b)).  Thus, under Plaintiffs' theory, judicial review could be commenced after the effective date and EPA would no longer have the authority under § 705.  EPA's interpretation of "effective date" in § 705 to include future compliance deadlines that have not passed avoids this illogical result.

Neither case law nor prior agency practice precludes EPA's interpretation of § 705 to include compliance dates within the meaning of "effective date."  Aside from being unpublished and therefore non-binding precedent, the decision in *Safety-Kleen Corp. v. EPA*, No. 92-1629, 1996 U.S. App. LEXIS 2324, at *2-3 (D.C. Cir. Jan. 19, 1996), did not opine on the question presented here: whether the meaning of "effective date" includes compliance dates that have not yet passed.  The same is true of the prior EPA decisions Plaintiffs cite.  *See* Plfs. Mem. 29-30 & n.32.  Plaintiffs cite three decisions denying requests for administrative stay of a rule.  76 Fed. Reg. 23,318, 28,326 (May 17, 2011); 76 Fed. Reg. 4780, 4788 (Jan. 26, 2011); and 75 Fed. Reg. 49,556, 49,563 (Aug. 13, 2010).  None specifically addresses the question whether compliance deadlines that have not yet passed are within the meaning of "effective date."  For example, in the stay denial at 76 Fed. Reg. at 28,326, EPA had determined it was not going to reconsider the core regulatory standards at issue in the challenged rule and denied the stay request.  Thus, EPA simply had no occasion to decide whether future compliance deadlines were within the meaning of "effective date" under § 705.  In contrast to the circumstances in the cited stay denials, EPA may reconsider one or more limits in the ELG Rule that have compliance deadlines that have not passed.  In these circumstances, it is not unreasonable for EPA to conclude that its authority under § 705 to stay the effective date of its action extends to compliance deadlines for provisions of the Rule that are not yet applicable and that the Administrator may rescind or revise after further rulemaking.

**C.    Section 705 does not require agencies to use the four-part preliminary injunction standard employed by courts.**

Section 705 provides distinct standards for agencies and courts to provide relief pending judicial review, and in fact does not identify any particular standard that an agency, as opposed to a court, must consider in determining that "justice so requires" a stay.  Plaintiffs' attempt to graft the judicially four-part preliminary injunction standard as a condition of § 705 agency stays conflicts with the plain meaning of the statute and its legislative history.  It is also impractical and unwise in circumstances such as these, where a new administration has decided it wishes to take another look at the Rule due to pending litigation and new administration priorities.[13]

Section 705 provides in full:

[1] When an agency finds that justice so requires, it may postpone the effective date of action taken by it, pending judicial review.  [2] On such conditions as may be required and to the extent necessary to prevent irreparable injury, the reviewing court, including the court to which a case may be taken on appeal from or on application for certiorari or other writ to a reviewing court, may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings.

5 U.S.C. § 705.

In the first part of § 705, Congress plainly authorized an agency to stay the effective date of action by it whenever the agency finds that "justice so requires."  It did not otherwise elaborate on the standard that should apply to such agency action or the factors the agency should consider.  Thus, the statute expressly gives an agency broad discretion to determine whether a stay of its own action is in the interests of justice.

---

[13]  Moreover, as discussed above in part I, Plaintiffs' arguments improperly invite the Court to wade into the merits of the ELG Rule, which it lacks jurisdiction to do.

That Congress chose, in the second sentence of § 705, to make irreparable injury a predicate for a court's grant of a judicial stay—presumably over an agency's objection—demonstrates that neither irreparable injury nor any other portion of the traditional judicial test for granting preliminary relief is a predicate to an agency's own exercise of discretion under § 705. "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (citation and internal quotations omitted). By using different language, Congress established that the standards governing stays to be issued by the agencies and the courts differ.

The only case that Plaintiffs cite for their contrary view is *Sierra Club*, 833 F. Supp. 2d at 30-31, which is not binding on this Court. That court's holding—that § 705 imposes the same standard for stays on agencies as it does on courts—is not supported by § 705's text, which expressly states different criteria for agencies and courts. The *Sierra Club* court did not explain its contrary and conclusory reading of the text, and therefore this Court should not accord that decision any weight. *See* 833 F. Supp. 2d at 30-31.

Nor is Plaintiffs' interpretation of § 705 supported by the legislative history upon which *Sierra Club* relied. The legislative history states:

> This section permits either agencies or courts, *if the proper showing be made*, to maintain the status quo.... The authority granted is equitable and should be used by both agencies and courts to prevent irreparable injury or afford parties an adequate judicial remedy.

Administrative Procedure Act, Pub.L.1944–46, S. Doc. 248 at 277 (1946) (emphasis added). This language merely paraphrases the statutory text and sheds no additional light on what is "the proper showing [to] be made" by an agency or a court before granting § 705 relief. Given the limited weight that should be accorded legislative history, the Court should be especially hesitant

to impart significant meaning from a statement that simply parrots the statutory text. *United States v. Villanueva-Sotelo*, 515 F.3d 1234, 1245 (D.C. Cir. 2008) ("We fail to see how this sentence [of the legislative history], which merely parrots the terms of the statute, offers any enlightenment as to what those terms mean.") (citation and internal quotations omitted).

Indeed, subsequent legislative history from 1946 more closely tracks the statutory language and supports EPA's view of the statute. It states:

> [S]ection 10(d) provides that any agency may itself postpone the effective date of its action pending judicial review, *or*, upon conditions and as may be necessary to prevent irreparable injury, reviewing courts may postpone the effective date of contested action or preserve the status quo pending conclusion of judicial review proceedings.

APA, Pub. L. 1944, S. Doc. 248 at 369 (emphasis added). At the very least, that Congress used slightly differing formulations in describing the statutory text injects sufficient ambiguity to cast doubt on *Sierra Club's* and Plaintiffs' reading of the statute.

More fundamentally, the four-factor preliminary injunction standard is a judicially made standard that courts have fashioned over time to impose a framework on their own determinations of when equitable relief may be warranted. Courts should not require an agency to employ the same framework to grant equitable relief under § 705. The Supreme Court in *Vermont Yankee Nuclear Power Corp. v. NRDC*, 435 U.S. 519, 525 (1978), "caution[ed]" reviewing courts against engrafting their own notions of proper procedures upon agencies." And recently, in *Perez v. Mortgage Bankers Ass'n*, 135 S. Ct. 1199, 1207 (2015), the Supreme Court reiterated the "basic tenet of administrative law that agencies should be free to fashion their own rules of procedure." Engrafting the framework for judicial stays on stays granted by agencies, when § 705 itself gives agencies broad discretion to determine what "justice . . . requires," is contrary to these longstanding principles.

Additionally, strong policy and practical reasons exist to reject Plaintiffs' argument, particularly in these circumstances where a new administration has decided to reconsider a rule and pending judicial challenges have not been finally decided. Requiring an agency to make a showing of irreparable harm and likelihood of success on the merits could undermine or prejudge the agency's future positions in litigation and future agency rulemaking. As already discussed, agencies have considerable discretion in interpreting the statutes they administer and formulating policy based on the information before them, including discretion to reconsider prior positions without concluding that a prior position was wrong. *See FCC v. Fox Television Stations*, 556 U.S. 502, 514 (2009) (agency change in position is not subject to a more demanding standard of review); *SKF USA Inc. v. United States*, 254 F.3d 1022, 1028-30 (Fed. Cir. 2001) (agency may seek voluntary remand of agency action even without confessing error). This is particularly true where, as here, the CWA affords EPA wide discretion to consider factors and weigh them, and more than one policy outcome is likely to comport with the statute.

An agency could reasonably conclude that it is in the interests of justice to stay its own action pending judicial review, to preserve the regulatory status quo, while also preserving its ability to defend its initial decision. Likewise, in cases, such as this one, where an agency, in response to the litigation, decides to reconsider its decision, in whole or in part, the administrative process is better served by not requiring the agency to confess error or concede irreparable harm in the litigation because it preserves the agency's discretion to propose and consider a wider range of options for satisfying its statutory obligations.

That EPA has elected as a matter of discretion to apply the judicial four-factor framework in response to some requests for administrative stays does not mean that EPA was required to do so in granting a § 705 stay here. EPA's past statements do not articulate a binding agency policy

adopting the judicial four-factor standard for stays.[14]  Although EPA used the four-factor test in

denying the stay requests cited by Plaintiffs (*see* 76 Fed. Reg. at 28,326, 76 Fed. Reg. 4788, and

75 Fed. Reg. 49,563), it has not said that it must adhere to that standard in granting stays and, in

fact, EPA has granted stays *without* applying the four-factor test (*see, e.g.,* 59 Fed. Reg. 43,048

(Aug. 22, 1994), 63 Fed. Reg. 46,332 (Aug. 31, 1998), 61 Fed. Reg. 28,508 (June 5, 1996)).

Moreover, requiring EPA to address the four judicial stay factors prior to granting a § 705 stay

would force EPA to concede its litigating position and prejudge the outcome of its

reconsideration proceedings.  Section 705 does not impose such a standard on EPA and

compelling EPA to do so disserves the integrity of the agency's future administrative process.

> **D.    EPA was not required to undertake notice-and-comment rulemaking before issuing a temporary stay of compliance deadlines under APA § 705.**

Plaintiffs' contention that the Stay Notice is a substantive rule that requires notice-and-

comment procedures is not supported by the statute or case law.

Section 705 is a free-standing grant of authority to agencies to provide equitable relief

from regulatory requirements pending judicial review.  It allows EPA to preserve the status quo

while a party seeks relief from an agency action in a judicial forum.  Nothing in § 705 suggests

that the requirements of 5 U.S.C. § 553 apply to agency stays pending judicial review.  It does

not cross-reference the procedural requirements of § 553 or otherwise indicate that an agency

must comply with rulemaking procedures when issuing a temporary stay pending judicial review

under § 705.  The APA has many cross-references, indicating that Congress chose to include

them when it wanted to do so.  *E.g.* 5 U.S.C. § 553(c) (cross-referencing §§ 556 and 557); 5

---

[14]  Plaintiffs contend that a decision by the EPA Environmental Appeals Board represents a decision by the EPA Administrator that the agency "had to meet the same test as a court would have to meet in order to stay a rule under [§ 705]."  Plfs. Mem. 21 & n.30.  However, the Board's statement that the judicial stay factors "are also used by agencies in deciding whether to issue stays of their own orders" is not a statement that EPA *must* use those factors.

U.S.C. § 556(a) (cross-referencing §§ 553 and 554); 5 U.S.C. § 706(2)(E) (cross-referencing §§ 556 and 557).  The fact that Congress did not cross-reference § 553 in § 705 is fatal to Plaintiffs' argument.  And indeed much of the utility of § 705 stays would be lost if an agency was required to undertake notice-and-comment procedures before invoking § 705 to temporarily stay compliance deadlines in a rule.

Plaintiffs' arguments that the Stay Notice is a "rule" subject to the procedural requirements of § 553 are unavailing.  A "rule" is defined as "the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy."  5 U.S.C. § 551(4).  Section 705 empowers an agency to stay the effective date of rules that have not yet become effective, pending judicial review.  In the Stay Notice, EPA does not purport to "implement, interpret, or prescribe law or policy."  It serves only to maintain the status quo during the litigation.  Accordingly, the Stay Notice is not a rule requiring notice-and-comment procedures.

Plaintiffs' argument hinges on its mischaracterization of the Stay Notice as a repeal of the ELG Rule.  Plfs. Mem. 34-36.  The Stay Notice, which is issued under § 705, is clearly distinct from a repeal of the ELG Rule.  As the agency stated in the Stay Notice and has subsequently acknowledged, a stay under § 705 only stays the compliance dates pending judicial review.  If EPA wishes to formally postpone the compliance deadlines or otherwise modify or repeal the ELG Rule, it must undertake notice-and-comment rulemaking.  It is precisely because the Stay Notice is limited to preserving the status quo pending litigation pursuant to specific statutory authority that EPA also issued a separate notice of proposed rulemaking to postpone the ELG Rule compliance deadlines until EPA completes its reconsideration of the ELG Rule.

Plaintiffs' attempt to graft the notice and comment requirements of § 553(c) onto § 705 stay notices is also undermined by their failure to account for § 553's other procedural requirements. Under their theory of the case, there is no principled reason why § 553(d)—which mandates that an agency shall publish a rule at least 30 days before the effective date—would not also apply to postponement notices issued under § 705. Plaintiffs do not make this argument, presumably, because they recognize that Congress could not have intended to impose such delays on actions intended to preserve the regulatory status quo. But their method of relying on some of § 553's requirements while ignoring others is unsupported by any canon of construction.

The only case to address this precise issue, *Sierra Club*, 833 F. Supp. 2d at 27-28, disagreed with Plaintiffs that a stay issued pursuant to § 705 is a "rule" subject to the APA's notice-and-comment procedures. Like the agency stay at issue in *Sierra Club*, the Delay Notice is a temporary stay that serves to preserve the status quo pending judicial review. It does not substantively alter or amend the ELG Rule. Therefore, the Stay Notice does not constitute substantive rulemaking under the APA. *See Sierra Club*, 833 F. Supp. 2d at 27-28.

Plaintiffs cite a series of inapposite cases involving agency action to indefinitely postpone compliance deadlines. Plfs. Mem. 34-36. In each of the cited cases, the agency had purported to amend the regulation at issue, thereby effectuating a substantive change in the law. The Stay Notice purports to do no such thing. Rather, the Stay Notice states that, pursuant to the authority in § 705, EPA is staying certain provisions of the ELG Rule pending judicial review. 82 Fed. Reg. 19,005. While it is possible that its parallel reconsideration proceedings could result in substantive changes to the ELG Rule, any such changes to the rule would be undertaken in accordance with notice-and-comment procedures required by the APA. Indeed, an agency always maintains the authority to revise a rule through the APA's rulemaking procedures.

Congress clearly intended to give EPA authority in § 705 that is separate and distinct from its rulemaking authority. Because it conveys authority that is separate and distinct from an agency's rulemaking authority, there is no reason to read § 705 as requiring rulemaking procedures that Congress could have easily required, but chose not to.

In sum, the text and structure of the APA make clear that EPA is not required to use notice-and-comment procedures to temporarily stay a rule pending judicial review under § 705.

## IV.    Remedy

Plaintiffs have not demonstrated that they are entitled to review in this Court, let alone any relief on the merits. Moreover, Plaintiffs' request that the Court order EPA to send letters to states and UWAG "inform[ing] the state of this Court's decision" and "remind[ing] the state" that it "must implement the Rule by incorporating its deadlines into NPDES permits" (Plfs. Mem. 43) should be rejected.

There is no dispute that, if this Court has jurisdiction, the APA governs its review. *See* Plfs. Mem. 12, 40. "'[U]nder settled principles of administrative law, when a court reviewing agency action determines that an agency made an error of law, the court's inquiry is at an end: the case must be remanded to the agency for further action consistent with the correct legal standards.'" *Palisades Gen. Hosp. Inc. v. Leavitt*, 426 F.3d 400, 403 (D.C. Cir. 2005) (citing *County of Los Angeles v. Shalala*, 192 F.3d 1005, 1011 (D.C. Cir. 1999)). District courts lack authority under the APA to order specific relief of the kind Plaintiffs request. *Palisades Gen. Hosp.*, 426 F.3d at 403 (holding that "district court had no jurisdiction to order specific relief" to require agency to issue a reclassification of hospital's wage status under Medicare or adjustment of reimbursement payment).

The cases Plaintiffs cite in support of their request for specific relief are not applicable here.  In *Cobell v. Norton*, 240 F.3d 1081, 1108 (D.C. Cir. 2001), for example, the court ordered specific relief to compel action it had found to be "unlawfully withheld or unreasonably delayed" and to cure breaches of highest fiduciary duties, in light of a "historical record of recalcitrance." In *Flaherty v. Pritzker*, 17 F. Supp. 3d 52, 55 (D.D.C. 2014), Plaintiffs had sought to compel defendants to undertake specific actions that Plaintiffs contended were required by a "Remedial Order" that defendants had proposed to remedy procedural violations.  Importantly, the court denied the plaintiffs' request, finding that it would be "reversible error" to order specific relief. *Flaherty*, 17 F. Supp. 3d at 57.[15]  The present case is a garden-variety challenge to agency action and the remedy, if one is warranted, is to "set aside" the action.  5 U.S.C. § 706(2).

Plaintiffs' request for specific relief fails for the additional reason that it is really a collateral attack on EPA's April 12, 2017 letter announcing reconsideration and its April 11, 2017 letter to state permitting authorities.  The letters are mere policy statements that effect no change to the current legal regime and therefore are not final agency action challengeable under the APA.  *Am. Tort Reform Ass'n v. Occupational Safety & Health Admin.*, 738 F.3d 387, 395 (D.C. Cir. 2013) (agency policy statements that do not establish binding norm are not final action subject to review); *see Portland Cement Ass'n v. EPA*, 665 F.3d 177, 185 (D.C. Cir. 2011) (noting that review is available "[i]f reconsideration is denied").  Therefore, the Court has no authority to grant any relief with respect to the letters.

Accordingly, the Court should deny Plaintiffs' request to order EPA to issue letters to states and regulated parties regarding the ELG Rule compliance deadlines.

---

[15]  Other cases Plaintiffs cite to support their claim for specific relief were decided by courts outside of this circuit and therefore are not binding precedent.  *See* Plfs. Mem. 44 (citing *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 524 F.3d 917 (9th Cir. 2008); *Alaska Ctr. For the Env't v. Browner*, 20 F.3d 981 (9th Cir. 1994)).

## CONCLUSION

For the reasons stated above, the Court should dismiss the action or transfer it to the Fifth Circuit pursuant to 28 U.S.C. § 1631.  If, however, the Court reaches Plaintiffs' arguments on summary judgment, it should deny the motion and grant EPA's cross motion for summary judgment.

Dated: July 28, 2017                     Respectfully submitted,

                                         JEFFREY H. WOOD
                                         Acting Assistant Attorney General
                                         Environment and Natural Resources Division

                                          /s/  Jessica O'Donnell
                                         JESSICA O'DONNELL (Bar No. 473166)
                                         United States Department of Justice
                                         Environmental Defense Section
                                         P.O. Box 7611
                                         Washington, DC 20044
                                         T: (202) 305-0851
                                         F: (202) 514-8865
                                         jessica.o'donnell@usdoj.gov

OF COUNSEL:
JESSICA H. ZOMER
U.S. Environmental Protection Agency
Office of General Counsel
Washington, DC

                                         *Counsel for Defendants*