**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CLEAN WATER ACTION, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>E. SCOTT PRUITT, Administrator, U.S. Environmental Protection Agency, *et al.*,<br><br>*Defendants*. | Civil Action No. 17-0817 (DLF) |

**MEMORANDUM OPINION**

Before the Court are five pending motions. For the reasons that follow, the Court will deny the Plaintiffs' Motion for Leave to Amend and Supplement the Complaint, Dkt. 63, and grant the Defendants' Motion to Dismiss, Dkt. 60. In addition, because the Court will grant dismissal, the Court will deny as moot the Plaintiffs' Motion for Summary Judgment, Dkt. 20, the Defendants' Cross-Motion for Summary Judgment or Dismissal or Transfer, Dkt. 32, and the Intervenor-Defendant's Cross-Motion for Summary Judgment or Dismissal or Transfer, Dkt. 49.

## I. Background

The Clean Water Act prohibits "the discharge of any pollutant by any person" except as authorized by the Act, 33 U.S.C. § 1311(a), and it requires the Environmental Protection Agency and its Administrator (collectively, the EPA) to promulgate effluent limitations and standards governing the discharge of pollutants from power plants, *see id.* §§ 1311(b), 1314(b), 1316(a), 1317, 1342(a). An "effluent limitation" is "any restriction established by a State or the Administrator on quantities, rates, and concentrations" of certain pollutants "discharged from point sources," such as power plants, into various waters. *Id.* § 1362(11). The Clean Water Act

also requires the EPA to review and, if necessary, revise its effluent limitations and standards. *See id.* §§ 1311(d), 1314, 1317(b).

The EPA enforces effluent limitations and standards through, among other programs, the National Pollutant Discharge Elimination System program. Under that program, the EPA issues permits allowing power plants to discharge pollutants that wash downstream "upon [the] condition that such discharge will meet . . . all applicable requirements under [various provisions of the Clean Water Act]." *Id.* § 1342(a)(1). The permits "impose limitations on the discharge of pollutants, and establish related monitoring and reporting requirements, in order to improve the cleanliness and safety of the Nation's waters." *Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 138 S. Ct. 617, 625 (2018) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 174 (2000)).

This case involves three actions taken by the EPA with regard to effluent limitations under the Clean Water Act: a final rule promulgated in 2015, an indefinite stay issued in April 2017, and a subsequent final rule promulgated in September 2017.

**A.     Effluent Limitations under the Clean Water Act**

The EPA promulgated the Steam Electric Power Plant Effluent Limitations Guidelines Rule (ELG Rule) on November 3, 2015. *See* 80 Fed. Reg. 67,838. Relevant here, the ELG Rule addressed effluent limitations and standards for six wastestreams generated by steam electric power plants: bottom ash transport water, combustion residual leachate, flue gas desulfurization wastewater, flue gas mercury control wastewater, fly ash transport water, and gasification wastewater. *See id.* at 67,841–42. The ELG Rule required most power plants to comply with the effluent limitations "as soon as possible" after November 1, 2018, and no later than December 31, 2023. *Id.* at 67,854. Within that range, the particular compliance date for each plant would

be determined by the plant's National Pollutant Discharge Elimination System permit, which is typically issued by a state environmental agency. *See* 40 C.F.R. § 423.11(t). The ELG Rule also provided for effluent limitations that took effect immediately for "legacy wastewater," *i.e.*, certain wastewaters generated after the ELG Rule but before the future compliance deadlines kicked in. 80 Fed. Reg. at 67,854–55. The ELG Rule quickly became the subject of legal challenges: the EPA received seven petitions for review, which were consolidated before the U.S. Court of Appeals for the Fifth Circuit. *See* Consolidation Order, U.S. Judicial Panel on Multidistrict Litigation, *Sw. Elec. Power Co. v. EPA*, No. 15-60821 (5th Cir. Dec. 8, 2015), Doc. 513301255; *see also* 82 Fed. Reg. 43,494, 43,495. The EPA also received petitions for administrative reconsideration of the ELG Rule. *See* 82 Fed. Reg. at 43,495.

On April 25, 2017, the EPA issued an Indefinite Stay of the ELG Rule. 82 Fed. Reg. 19,005. As authority for the Indefinite Stay, the EPA invoked Section 705 of the Administrative Procedure Act, which permits an agency to "postpone the effective date of action taken by it, pending judicial review," when the agency "finds that justice so requires." 5 U.S.C. § 705; *see also* 82 Fed. Reg. at 19,005–06. According to the EPA, the Indefinite Stay sought to preserve the regulatory status quo while the Fifth Circuit litigation remained pending and the EPA reconsidered the ELG Rule. *Id.* at 19,005. The Stay indefinitely postponed the compliance deadlines for five of the six wastestreams addressed by the ELG Rule (all but combustion residual leachate). *Id.* at 19,005–06. In addition, the EPA noted that it would conduct notice-and-comment rulemaking in order to revise the ELG Rule's compliance deadlines, *see id.* at 19,006, which the EPA initiated with a notice of proposed rulemaking in June 2017, *see* 82 Fed. Reg. 26,017.

On September 18, 2017, the EPA promulgated the ELG Rule Amendment. *See* Postponement of Certain Compliance Dates for ELGs for Steam Electric Power Generating Point Source Category, 82 Fed. Reg. 43,494. The ELG Rule Amendment withdraws the Indefinite Stay and changes the earliest compliance deadlines for two wastestreams (bottom ash transport water and flue gas desulfurization wastewater) from November 1, 2018 to November 1, 2020 while the EPA completes a new rulemaking on those wastestreams. *Id.* at 43,496, 43,498, 43,500. Also, by withdrawing the Indefinite Stay, the Amendment changes the "no later than" compliance deadline for bottom ash transport water and flue gas desulfurization wastewater to December 31, 2023, as it had been under the ELG Rule. *Id.* at 43,496; *see also* 40 C.F.R. § 423.13(g)(1)(i), (k)(1)(i). And, for the other three wastestreams[1] affected by the Indefinite Stay, the Amendment permits the effluent limitations and standards initially imposed by the ELG Rule to go back into effect, and the Amendment announces that the EPA does not plan to conduct a new rulemaking for those wastestreams. *See* 82 Fed. Reg. at 43,494–96, 43,498.

**B. Procedural History**

The plaintiffs are eight environmental advocacy organizations that seek to improve water quality, particularly by reducing water pollution from large sources such as power plants.[2] Compl. ¶ 9, Dkt. 1. On May 3, 2017, they filed this action as a challenge to the Indefinite Stay for allegedly violating the Administrative Procedure Act in a number of ways. *Id.* ¶¶ 1, 19–20, 56–89. On June 13, 2017, the EPA moved to dismiss the case, transfer it to the Fifth Circuit

[1] The three wastestreams are flue gas mercury control wastewater, fly ash transport water, and gasification wastewater. 82 Fed. Reg. at 19,005.

[2] The eight organizations are Clean Water Action, Environmental Integrity Project, Sierra Club, Waterkeeper Alliance, Inc., PennEnvironment, Inc., Chesapeake Climate Action Network, Physicians for Social Responsibility Chesapeake, Inc., and Prairie Rivers Network. Compl. ¶¶ 1, 10–18; *see also* Proposed. Am. Compl. ¶¶ 1, 11–20, Dkt. 63-3.

pursuant to 28 U.S.C. § 1631, or stay proceedings. Dkt. 18. The next day, the plaintiffs moved for summary judgment. Dkt. 20. The Court then denied the EPA's motion to dismiss without prejudice but invited the EPA to reassert the same arguments in a consolidated brief in opposition to the plaintiffs' summary judgment motion. Dkt. 23. In the ensuing consolidated briefing, the EPA accepted the Court's invitation by opposing the plaintiffs' motion for summary judgment and cross-moving for summary judgment, dismissal, or transfer.[3] Dkt. 32. The consolidated briefing concluded on September 11, 2017. *See* Dkt. 57; Dkt. 58.

One week later, the EPA promulgated the ELG Rule Amendment. Soon after, on September 21, 2017, the EPA again moved to dismiss this case, arguing that the case is moot because the ELG Rule Amendment withdraws the Indefinite Stay challenged by the plaintiffs. Dkt. 60.

On October 5, 2017, the plaintiffs moved for leave to amend and supplement their complaint to add two claims challenging the ELG Rule Amendment under the Administrative Procedure Act.[4] *See* Dkt. 63; *see also* Proposed Am. Compl. ¶¶ 104–111, Dkt. 63-3. In opposition, the EPA argued that the proposed claims are futile because the Court lacks

---

[3] The intervenor-defendant Utility Water Act Group also cross-moved for summary judgment, dismissal, or transfer. Dkt. 49.

[4] Contemporaneously, the plaintiffs filed a protective petition for review of the ELG Rule Amendment in the U.S. Court of Appeals for the D.C. Circuit. *Clean Water Action v. Pruitt*, No. 17-1216 (D.C. Cir. Oct. 11, 2017), Doc. 1698542. The D.C. Circuit transferred the petition to the Fifth Circuit pursuant to 28 U.S.C. § 2112, explaining that such transfer "is appropriate 'where the same or inter-related proceeding was previously under review in a court of appeals, and is now brought for review . . . in a follow-on phase.'" Order, *Clean Water Action v. Pruitt*, No. 17-1216 (D.C. Cir. Feb. 1, 2018) (per curiam), Doc. 1716063 (quoting *Pub. Serv. Comm'n v. FPC*, 472 F.2d 1270, 1270 (D.C. Cir. 1972)); *see also* Dkt. 78 (notice of order).

Upon receiving the transferred petition, the U.S. Court of Appeals for the Fifth Circuit stayed further proceedings until a decision by this Court on the pending motions in this case. *See* Order, *Clean Water Action v. EPA*, No. 18-60079 (5th Cir. Apr. 5, 2018), Doc. 514417108; *see also* Dkt. 84 (notice of order).

jurisdiction over them.  Dkt. 70 at 2–6.  In addition, the intervenor-defendants argued that the proposed claims are futile because 28 U.S.C. § 2112 would require this Court to transfer the proposed claims to the Fifth Circuit and, moreover, the proposed claims would unduly expand and delay the litigation before this Court.  Dkt. 69 at 18–21, 26–29.  Briefing concluded on October 26, 2017.  *See* Dkt. 71.  The case was reassigned to the undersigned judge on December 4, 2017.  The plaintiffs have since submitted a notice of supplemental authority regarding a recently decided United States Supreme Court case, *National Ass'n of Manufacturers v. Department of Defense*, 138 S. Ct. 617, 623 (2018).  Dkt. 74.  The Court now addresses the plaintiffs' motion for leave to amend and supplement the complaint, followed by the EPA's motion to dismiss.

## II.  Plaintiffs' Motion for Leave to Amend and Supplement the Complaint

Whereas their initial complaint challenged the Indefinite Stay, the plaintiffs now seek to add two claims challenging the ELG Rule Amendment.  Dkt. 63.  The proposed claims assert that the EPA violated the Administrative Procedure Act by promulgating the ELG Rule Amendment (1) in excess of the agency's statutory authority and (2) without considering all relevant factors and providing an adequate justification for the agency's decision.  *See* Proposed Am. Compl. ¶¶ 104–11.  The proposed claims, however, are futile, and they would unduly delay and alter the scope of this litigation.  Therefore, the Court will deny the plaintiffs' motion.

### A.  Legal Standard

An addition to a pleading may be an "amendment" under Rule 15(a) or a "supplement" under Rule 15(d) of the Federal Rules of Civil Procedure.  The distinction "is in most instances of little moment," but an amendment "typically rest[s] on matters in place *prior to* the filing of the original pleading," while the "distinguishing feature of [a supplement] is that it sets forth

'transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented.'" *United States v. Hicks*, 283 F.3d 380, 385 (D.C. Cir. 2002) (quoting Fed. R. Civ. P. 15(d)). Because the plaintiffs here seek to add claims challenging a rule promulgated months *after* the initial complaint, the plaintiffs' request is best styled a motion for leave to supplement their complaint.

Rule 15(d) of the Federal Rules of Civil Procedure provides that "the court *may*, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d) (emphasis added). Some cases state that Rule 15(d) motions are "subject to the same standard" as Rule 15(a) motions, *see, e.g.*, *Wildearth Guardians v. Kempthorne*, 592 F. Supp. 2d 18, 23 (D.D.C. 2008), which would mean that leave is warranted "unless there is sufficient reason, such as 'undue delay, bad faith or dilatory motive . . . repeated failure to cure deficiencies by [previous] amendments . . . [or] futility of amendment.'" *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also Cause of Action Inst. v. DOJ*, No. 16-2226, 2017 WL 4541352, at *3 (D.D.C. Oct. 10, 2017) (labeling any difference between the two motions "a matter of semantics").

But the two rules are not the same. Rule 15(d) is permissive: it tells courts that they "may" grant leave to supplement, while Rule 15(a)(2) states that courts "should" give leave to amend "when justice so requires." Fed. R. Civ. P. 15; *see also Jama v. ICE*, 543 U.S. 335, 346 (2005) ("The word 'may' customarily connotes discretion. That connotation is particularly apt where . . . 'may' is used in contraposition to the word 'shall' . . . ."); *Lopez v. Davis*, 531 U.S. 230, 241 (2001) ("Congress' use of the permissive 'may' . . . contrasts with the legislators' use of a mandatory 'shall' in the very same section" and thus confers an "authority, but not [a]

duty[.]”); *Baylor v. Mitchell Rubenstein & Assocs.*, 857 F.3d 939, 947 (D.C. Cir. 2017) (“[I]t is clear that [a Rule’s] use of the permissive verb ‘may’ refers to the permissive nature of the district judge’s authority . . . .”); *Anglers Conservation Network v. Pritzker*, 809 F.3d 664, 671 (D.C. Cir. 2016) (“Ordinarily, legislation using ‘shall’ indicates a mandatory duty while legislation using ‘may’ grants discretion.”); *Baptist Mem’l Hosp. v. Sebelius*, 603 F.3d 57, 63 (D.C. Cir. 2010) (“‘[M]ay’ is permissive rather than obligatory.”); *Ala. Power Co. v. FERC*, 160 F.3d 7, 12 (D.C. Cir. 1998) (same); Antonin Scalia & Bryan A. Garner, Reading Law 112 (2012) (stating that the “traditional, commonly repeated rule . . . that ‘may’ is permissive” is “so obvious as to be hardly worth the saying”). The plain text of Rule 15(d) thus permits a court to grant leave to supplement, but imposes no standard requiring a court to do so. *See* Fed. R. Civ. P. 15 advisory committee’s note to 1963 amendment (“Rule 15(d) is intended to give the court broad discretion in allowing a supplemental pleading.”); *James Madison Project v. DOJ*, 208 F. Supp. 3d 265, 277 (D.D.C. 2016) (“The decision to grant leave under Rule 15(d) is discretionary.”).

Even looking past the text of the rules to this Circuit’s caselaw discussing them, the Rule 15(d) standard overlaps with the Rule 15(a)(2) standard, but they are not the “same standard.” *Wildearth Guardians*, 592 F. Supp. 2d at 23. *Compare Firestone*, 76 F.3d at 1208, *with Hall v. CIA*, 437 F.3d 94, 101 (D.C. Cir. 2006). Both standards, however, consider futility and delay. “[B]oth motions for leave to amend and motions to supplement should be denied where amendment (or supplementation) would be futile,” *i.e.*, if the proposed claim would not survive a motion to dismiss. *Sai v. DHS*, 149 F. Supp. 3d 99, 126 (D.D.C. 2015); *see also Hettinga v. United States*, 677 F.3d 471, 480 (D.C. Cir. 2012) (affirming denial of leave to supplement on futility grounds). Also, “[d]elay and prejudice are precisely the matters to be addressed in considering whether to grant motions for supplemental pleadings; such motions are to be ‘freely

granted when doing so will promote the economic and speedy disposition of the entire controversy between the parties, will not cause undue delay or trial inconvenience, and will not prejudice the rights of any of the other parties to the action.'" *Hall v. CIA*, 437 F.3d 94, 101 (D.C. Cir. 2006) (quoting 6A Wright & Miller, Federal Practice & Procedure § 1504, at 186–87 (2d ed. 1990)); *see also Firestone*, 76 F.3d at 1208. Because futility and delay undergird the Court's decision to deny plaintiffs' motion for leave to supplement the complaint, there is no need to further analyze the precise differences between the two standards at this time.

**B. Jurisdiction**

In this case, the plaintiffs' proposed claims are futile because this Court lacks jurisdiction to review them. The Administrative Procedure Act generally provides for district court review of EPA actions. 5 U.S.C. § 704. But the Clean Water Act enumerates seven categories of EPA actions for which review lies directly and exclusively in the federal courts of appeals. 33 U.S.C. § 1369(b)(1); *see also Nat'l Ass'n of Mfrs.*, 138 S. Ct. at 623, 626, 628. Under the category relevant here, the federal courts of appeals have exclusive jurisdiction to review EPA actions "in approving or promulgating any effluent limitation or other limitation under section 1311, 1312, 1316, or 1345 of [the Clean Water Act]." 33 U.S.C. § 1369(b)(1)(E). The Act defines "effluent limitation" as "any restriction established by a State or the Administrator on quantities, rates, and concentrations" of certain pollutants "discharged from point sources" into various waters. *Id.* § 1362(11). And "an 'other limitation' must be similar in kind to an 'effluent limitation': that is, a limitation related to the discharge of pollutants." *Nat'l Ass'n of Mfrs.*, 138 S. Ct. at 628. "An 'other limitation,' for instance, could be a non-numerical operational practice or an equipment specification that, like an 'effluent limitation,' restricts the discharge of pollutants, even though

such a limitation would not fall within the precise statutory definition of 'effluent limitation.'" *Id.* at 628–29.

To begin, it is undisputed that the 2015 ELG Rule promulgated effluent limitations within the meaning of Section 1369(b)(1). In particular, the ELG Rule established effluent limitations for six wastestreams generated by new and existing steam electric power plants; the earliest compliance deadlines for those effluent limitations were November 1, 2018.[5] *See* 80 Fed. Reg. at 67,841–42. Also, the ELG Rule established effluent limitations for "legacy wastewater," *i.e.*, wastewater generated *after* the Rule's effective date but *before* the compliance deadlines kicked in. *Id.* at 67,854. Because the ELG Rule fell within the ambit of Section 1369(b)(1), the Rule's challengers filed in courts of appeals, and their actions were consolidated before the Fifth Circuit. *See* Consolidation Order, U.S. Judicial Panel on Multidistrict Litigation, *Sw. Elec. Power Co. v. EPA*, No. 15-60821 (5th Cir. Dec. 8, 2015), Doc. 513301255; *see also, e.g.*, Petitions for Review, *Sw. Elec. Power Co. v. EPA*, No. 15-60821, Doc. 513280720 (5th Cir.), Doc. 513302904 (8th Cir.), Doc. 513303045 (2d Cir.), Doc. 513319819 (9th Cir.).

The plaintiffs in this case, by contrast, maintain that the ELG Rule Amendment falls outside the ambit of Section 1369(b)(1) because the Amendment does not promulgate "any new *limitations*, but instead only postpones the effective date of effluent limitations that were previously promulgated." Pls.' Reply at 7, Dkt. 71. Under the plaintiffs' reading, the Clean Water Act may require parallel and potentially redundant litigation: the courts of appeals directly review any regulation that initially promulgates a new effluent limitation, while district courts review any subsequent changes to the regulation that do not rise to the level of "new

[5] As noted, the six wastestreams are: bottom ash transport water, combustion residual leachate, flue gas desulfurization wastewater, flue gas mercury control wastewater, fly ash transport water, and gasification wastewater. *See* 80 Fed. Reg. at 67,841–42.

restrictions." *Id.* at 9; *see also id.* at 8–11; Pls.' Mot. at 11–12, Dkt. 63. The Act, however, does not require such parallel litigation in this case because the ELG Rule Amendment approves or promulgates effluent limitations or other limitations within the meaning of Section 1369(b)(1) in at least two ways.

First, the ELG Rule Amendment approves or promulgates "limitation[s] related to the discharge of pollutants" by subjecting power plants to different effluent limitations for all five wastestreams implicated by the Indefinite Stay issued in April 2017. *Nat'l Ass'n of Mfrs.*, 138 S. Ct. at 628. The plaintiffs rely heavily on the argument that the Amendment does not create new effluent limitations but rather "takes existing restrictions that were established by EPA in the 2015 ELG Rule and delays their compliance date by two years." Pls.' Reply at 9. But in doing so, the plaintiffs ignore an intervening event—the Indefinite Stay—that changes the relevant status quo ante.

When the ELG Rule Amendment was promulgated, much of the ELG Rule was not in effect; rather, the Stay had *indefinitely* postponed compliance for five wastestreams. 82 Fed. Reg. at 19,005–06. As a result, under the status quo immediately preceding the Amendment, five wastestreams were not at all subject to "existing restrictions" established by the ELG Rule. The Amendment, by withdrawing the Indefinite Stay, limits effluents compared to the status quo ante. In particular, the Amendment (i) imposes December 31, 2023 as the "no later than" compliance deadline for bottom ash transport water and flue gas desulfurization, as it had been under the ELG Rule, *see* 40 C.F.R. § 423.13(g)(1)(i) (flue gas desulfurization wastewater), (k)(1)(i) (bottom ash transport water); *see also* 82 Fed. Reg. at 43,496; and (ii) imposes effluent limitations initially set by the ELG Rule but indefinitely postponed by the Stay for three other wastestreams: flue gas mercury control wastewater, fly ash transport water, and gasification

wastewater, *see* 82 Fed. Reg. at 43,494–96. In other words, the ELG Rule Amendment sets "limitation[s] related to the discharge of pollutants" that were not in effect on the day before the Amendment. *Nat'l Ass'n of Mfrs.*, 138 S. Ct. at 628.

Second, the Amendment approves or promulgates limitations related to the discharge of pollutants by revising the ELG Rule. In particular, the Amendment changes the ELG Rule's earliest compliance deadlines for two wastestreams: bottom ash transport water and flue gas desulfurization wastewater. 82 Fed. Reg. at 43,496. Under the ELG Rule, the earliest compliance deadlines for those effluent limitations would have been November 1, 2018. Under the Amendment, the earliest deadlines are November 1, 2020. *Id.* at 43,500. Changing a compliance deadline is "tantamount to amending . . . a rule." *Clean Air Council v. Pruitt*, 862 F.3d 1, 6 (D.C. Cir. 2017). By amending a rule that established effluent limitations, the ELG Rule Amendment revised the limitations and thus set different limitations. This is particularly true because the Amendment, while changing the compliance deadlines, does not free bottom ash transport water and flue gas desulfurization wastewater from all limitation until November 1, 2020. Rather, the Amendment subjects the two wastestreams to "legacy wastewater" limitations for a longer period of time. Under the ELG Rule, the "legacy wastewater" limitations would have applied until the earliest compliance deadlines in 2018. But under the ELG Rule Amendment, power plants must comply with the "legacy wastewater" limitations until at least 2020.[6] In this way, the Amendment approves or promulgates different limitations related to the discharge of pollutants.

---

[6] This point also distinguishes the ELG Rule Amendment from other EPA actions not considered effluent limitations in cases cited by the plaintiffs. *See, e.g.*, Pls.' Reply at 9–10, Dkt. 71. Those cases involved EPA actions that permanently exempted certain entities or effluents from compliance, and thus "impose[d] no restrictions," *Friends of the Everglades v. EPA*, 699 F.3d 1280, 1286 (11th Cir. 2012), or "provide[d] no limitation whatsoever," *Nw. Envtl. Advocates v.*

To illustrate, consider a road with a speed limit of forty miles per hour. Changing the road's speed limit sets a new speed limit, and the analysis is no different if the change only affects future compliance deadlines. If a rule (like the ELG Rule) sets twenty miles per hour as a new speed limit that will apply on the road starting in late 2018, and a later rule (like ELG Rule Amendment) revises the compliance deadline to 2020, the later rule sets a different speed limit on that road for the period from late 2018 to 2020: forty miles per hour instead of twenty miles per hour.

In fact, the plaintiffs acknowledge as much. Their proposed amended complaint characterizes the ELG Rule Amendment as "a revision of the ELG [R]ule's effluent limitations." Proposed. Am. Compl. ¶¶ 108–11. And the proposed complaint asserts that the revision was unlawful because the EPA did not make findings required by 33 U.S.C. § 1314(b), which provides "Effluent limitation guidelines" for "adopting or revising effluent limitations." 33 U.S.C. § 1314(b); Proposed Am. Compl. ¶¶ 108, 110 (citing 33 U.S.C. § 1314(b)). The plaintiffs thus fault the EPA for not complying with "effluent limitations guidelines" when promulgating the ELG Rule Amendment, while maintaining—for jurisdictional purposes—that the EPA did not approve or promulgate "effluent limitations or other limitations" via the ELG Rule Amendment. The Court declines to join in their mental gymnastics and concludes that the ELG

*EPA*, 537 F.3d 1006, 1016 (9th Cir. 2008); *see also id.* (Section 1369(b)(1)(E) does not apply to a regulation that "creates the categorical and permanent exemptions of three types of discharges from any limit imposed by a permitting requirement"). In contrast, the ELG Rule Amendment does not permanently exempt bottom ash transport water and flue gas desulfurization wastewater from limitations; rather, the Amendment changes the relevant effluent limitations with which power plants must comply going forward.

Rule Amendment "approv[es] or promulgat[es] effluent limitation[s] or other limitations[s]." 33 U.S.C. § 1369(b)(1)(E).[7]

Finally, the limitations are promulgated "under section 1311, 1312, 1316, or 1345," as required to fall within the scope of Section 1369(b)(1)(E); *see also Friends of Earth v. EPA*, 333 F.3d 184, 189 (D.C. Cir. 2003) ("[T]he references to particular sections . . . exclude others." (quoting *Longview Fibre Co. v. Rasmussen*, 980 F.2d 1307, 1313 (9th Cir. 1992)). Namely, the limitations are under Section 1311. "[T]he statutory context makes clear that the prepositional phrase—'under section 1311'—is most naturally read to mean that the effluent limitation or other limitation must be approved or promulgated 'pursuant to' or 'by reason of the authority of' [Section] 1311." *Id.* Here, the EPA promulgated the ELG Rule Amendment by reason of its

[7] The Court's conclusion requires no recourse to the "practical-effects" test rejected as inconsistent with the statutory text in *National Ass'n of Manufacturers*, nor any other functional approach. *See* 138 S. Ct. at 617; *see also id.* at 631–632 (rejecting a "functional interpretive approach" because it misconstrues prior caselaw and ignores the statutory text, albeit the text of Section 1369(b)(1)(*F*), not the specific provision at issue in this case); Pls.' Reply at 6; Notice of Suppl. Authority, Dkt. 74 (asserting that *National Ass'n of Manufacturers* supports the plaintiffs' argument that the ELG Rule Amendment "do[es] not fit with the plain text" of Section 1369(b)(1)(E)).

In *National Ass'n of Manufacturers*, the U.S. Supreme Court assessed whether courts of appeals or district courts have jurisdiction to review the EPA's Waters of the United States Rule, which defines the geographic scope of "waters of the United States" for purposes of the Clean Water Act. *See* 80 Fed. Reg. 37,054. The U.S. Supreme Court held that the Rule falls outside the ambit of Section 1369(b)(1)(E), even though the Rule might "have the 'legal or practical effect' of making [effluent] limitations applicable to certain waters." *Nat'l Ass'n of Mfrs.*, 138 S. Ct. at 630. In doing so, the Court emphasized that the Rule merely "announces" "'a definitional rule that clarifies the scope of' the statutory term 'waters of the United States,'" but "does not establish any regulatory requirements" and "imposes no enforceable duty on any state, local, or tribal governments, or the private sector." *Id.* at 626, 628 (quoting 80 Fed. Reg. at 37,054, 37,102).

The ELG Rule Amendment, by contrast, imposes enforceable duties and establishes regulatory requirements, specifically the limitations discussed above. Because the Amendment "impose[s] restrictions on the discharge of certain pollutants," it falls within the ambit of Section 1369(b)(1)(E). *Id.* at 629. In accordance with *National Ass'n of Manufacturers,* this conclusion is "grounded in the statutory text," not any functional approach. *Id.* at 630.

authority under Section 1311(d), which provides for EPA "review and revision of effluent limitations." 33 U.S.C. § 1311(d); *see* 82 Fed. Reg. at 43,496 (explicitly invoking Section 1311(d)).

Therefore, the ELG Rule Amendment approves or promulgates limitations within the meaning of Section 1369(b)(1), and challenges to the Amendment belong in the federal courts of appeals. 33 U.S.C. § 1369(b)(1)(E). Because this Court thus lacks jurisdiction over the plaintiffs' proposed claims challenging the Amendment, it would be futile for the plaintiffs to pursue the claims before this Court.

**C. Delay and Scope**

Furthermore, the plaintiffs' proposed claims would unduly delay and alter the scope of this litigation. Leave to supplement is warranted if a plaintiff shows that leave "will promote the economic and speedy disposition of the entire controversy between the parties, will not cause undue delay or trial inconvenience, and will not prejudice the rights of any of the other parties to the action." *Hall*, 437 F.3d at 10 (internal quotation marks omitted); *see Sai v. TSA*, 155 F. Supp. 3d 1, 7 (D.D.C. 2016) (denying leave to supplement because the plaintiff "failed to carry his burden" of demonstrating the *Hall* considerations).

Here, the plaintiffs' proposed claims would delay resolution of this case. The parties have already completed multiple rounds of briefing on various dispositive motions, *see* Dkt. 20; Dkt. 32; Dkt. 49; Dkt. 60, including the pending motion to dismiss that predates the plaintiffs' request to supplement the complaint. The EPA filed that motion on September 21, 2017. Dkt. 60. Fourteen days later, the plaintiffs filed their opposition brief, Dkt. 64, but also moved for leave to supplement the complaint with two claims challenging the ELG Rule Amendment, Dkt. 63. Granting leave to supplement would necessitate yet another round of briefing based on a

different administrative record, and it would prevent the Court from resolving the pending dispositive motions, which are otherwise ripe for resolution and which the Court addresses today. *See infra* Section III; *see also City of Williams v. Dombeck*, 203 F.R.D. 10, 11 (D.D.C. 2001) (denying leave to amend in part because the time needed to compile the administrative record and brief "yet another round" of dispositive motions "would delay resolution of the case"); *Biosafe-One, Inc. v. Hawks*, 639 F. Supp. 2d 358, 370 (S.D.N.Y. 2009), *aff'd*, 379 F. App'x 4 (2d Cir. 2010) (denying leave to supplement because, having "already dismissed plaintiffs' complaint in its entirety in the same opinion, leave would "unduly delay resolution of [the] case").

Moreover, the plaintiffs' proposed claims would significantly alter the scope of this case. The current complaint asserts six claims against the Indefinite Stay, all of which are specific to the Stay and Section 705 of the Administrative Procedure Act. *See* Compl. ¶¶ 56–89 (the Indefinite Stay violates the Administrative Procedure Act because it does not comply with various requirements of Section 705, departs from the EPA's prior practice, is inadequately justified, and was issued without notice and comment).

In contrast, the plaintiffs' two proposed claims would challenge the ELG Rule Amendment on wholly different grounds. Although the Amendment and the Stay are superficially similar because both broadly relate to the ELG Rule, the Amendment is a different type of agency action (a final rule promulgated after notice and comment instead of a Section 705 stay), promulgated based on a different administrative record, pursuant to different authority (the effluent limitations provisions of the Clean Water Act, not Section 705 of the Administrative Procedure Act). And due to these differences, the proposed claims assert different causes of action, namely that (1) the Amendment exceeds the EPA's statutory authority under the Clean

Water Act, which requires "compliance with effluent limitations" "as expeditiously as possible, but in no case later than three years after the date such limitations are promulgated," Proposed Am. Compl. ¶¶ 104–106 (quoting 33 U.S.C. § 1311); and (2) the EPA promulgated the Amendment without making the findings required by the Clean Water Act for a lawful revision of effluent limitations, *id.* ¶¶ 107–111 (citing 33 U.S.C. § 1314).

The proposed claims are thus factually and legally distinct from the current claims. And because the current claims are moot, *see infra* Section III, permitting the plaintiffs to supplement would effectively swap the current complaint for an entirely new complaint. Thus, the proposed claims—in addition to being futile—would unduly delay and alter the scope of this litigation, and the Court will therefore deny leave to supplement the complaint. *See Nat'l Treasury Emps. Union v. Helfer*, 53 F.3d 1289, 1295 (D.C. Cir. 1995) (affirming denial where the amendment "bore only [a] tangential relationship to the original claim" and did not prejudice the plaintiff because the plaintiff "can file [the amendment as] an independent challenge"); *Sai v. TSA*, 155 F. Supp. 3d 1, 7 (D.D.C. 2016); *Miss. Ass'n of Coops. v. Farmers Home Admin.*, 139 F.R.D. 542, 544 (D.D.C. 1991) (denying leave because the amendment "would do far more than allow plaintiff to fully litigate all the legal dimensions of their initial action," but rather "permit plaintiff to transform their case into something entirely new").

**III. Defendants' Motion to Dismiss for Lack of Jurisdiction**

Without any supplemental claims, the plaintiffs' complaint challenges only the Indefinite Stay issued by the EPA in April 2017. This challenge, however, is moot because the Stay was withdrawn in September 2017 and the case does not implicate exceptions to the mootness doctrine. Because the Court lacks jurisdiction to review moot cases, the Court will grant the defendants' motion to dismiss this case. Dkt. 60.

### A. Legal Standard

Under Rule 12(b)(1), a party may move to dismiss an action when the court lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A motion to dismiss for mootness is properly brought under Rule 12(b)(1) because "mootness itself deprives the court of jurisdiction." *Indian River Cty. v. Rogoff*, 254 F. Supp. 3d 15, 18–19 (D.D.C. 2017). "Federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies." *Conservation Force, Inc. v. Jewell*, 733 F.3d 1200, 1204 (D.C. Cir. 2013) (quoting *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983)); *see also* U.S. Const. art. III, § 2. To ensure an actual controversy remains extant, mootness must be assessed at "all stages of review." *Decker v. Nw. Envtl. Def. Ctr.*, 568 U.S. 597, 609 (2013).

A case is moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Schmidt v. United States*, 749 F.3d 1064, 1068 (D.C. Cir. 2014) (quotation marks omitted). This occurs when, for example, "intervening events make it impossible to grant the prevailing party effective relief," *Lemon v. Geren*, 514 F.3d 1312, 1315 (D.C. Cir. 2008), or when the Court's decision "will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future," *Aref v. Lynch*, 833 F.3d 242, 250 (D.C. Cir. 2016) (quotation marks omitted). Exceptions to the mootness doctrine may arise, however, when a challenged action is "voluntarily ceased" or "capable of repetition yet evades review." *See Cierco v. Mnuchin*, 857 F.3d 407, 414–15 (D.C. Cir. 2017).

"When ruling on a Rule 12(b)(1) motion, the court must treat the complaint's factual allegations as true and afford the plaintiff the benefit of all inferences that can be derived from the facts alleged." *Jeong Seon Han v. Lynch*, 223 F. Supp. 3d 95, 103 (D.D.C. 2016) (quotation marks omitted). Those factual allegations, however, receive "closer scrutiny" than they would in

the Rule 12(b)(6) context. *Id.* Also, unlike the Rule 12(b)(6) context, a court may consider documents outside the pleadings to evaluate whether it has jurisdiction. *See Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005). If the court determines that it lacks jurisdiction because a claim is moot, the court must dismiss the claim. Fed. R. Civ. P. 12(b)(1), 12(h)(3).

**B. Mootness**

This case is moot because the Indefinite Stay is no longer in effect. The EPA withdrew the Stay via a final rule, the ELG Rule Amendement, in September 2017. *See* 82 Fed. Reg. at 43,495–96. The plaintiffs assert that the ELG Rule Amendment only "purports to withdraw" the Indefinite Stay, *see* Pls.' Opp'n at 5, Dkt. 64, but the plaintiffs offer no reason to think that the Stay remains in effect. Contrary to the plaintiffs' assertions, the ELG Rule Amendment directly addresses the Stay and states that "EPA, hereby, withdraws that action." 82 Fed. Reg. at 43,496. In place of the withdrawn Stay, the ELG Rule Amendment postpones by two years the earliest compliance deadlines for two of the five wastestreams affected by the Stay: bottom ash transport water and flue gas desulfurization wastewater. *Id.* And, for the other three wastestreams affected by the Stay, the Amendment permits compliance deadlines previously set by the ELG Rule to go back into effect. *Id.* at 43,494.

The withdrawal of the Indefinite Stay and its replacement by the ELG Rule Amendment were "intervening events [that] make it impossible to grant the prevailing party effective relief." *Lemon*, 514 F.3d at 1315. The plaintiffs ask the Court to declare the Stay unlawful and vacate it, *see* Compl. at 21, but the Court cannot grant that relief. Because the stay was withdrawn, there is nothing for the Court to vacate, and a declaratory judgment would be an impermissible advisory opinion. *See Pub. Serv. Elec. & Gas Co. v. FERC*, 783 F.3d 1270, 1274 (D.C. Cir. 2015) ("[T]he

oldest and most consistent thread in the federal law of justiciability is that the federal courts will not give advisory opinions." (quotation marks omitted)); *Ctr. for Sci. in the Pub. Interest v. Regan*, 727 F.2d 1161, 1164 (D.C. Cir. 1984) (holding a challenge moot because the superseded agency action "no longer has any force" and "further judicial pronouncement on [the action] would be purely advisory"); *NRDC v. U.S. Nuclear Regulatory Comm'n*, 680 F.2d 810, 814–15 (D.C. Cir. 1982) (holding a challenge moot because "[i]n effect, [the plaintiff] seeks a declaration from this court that the initial promulgation of the [superseded] rule was unlawful, an advisory opinion which federal courts cannot provide").

Likewise, the Court cannot grant the plaintiffs' requests that the Court reinstate the compliance deadlines imposed by the ELG Rule and indefinitely postponed by the Stay. *See* Compl. at 21. The deadlines for three of the wastestreams were already reinstated by the ELG Rule Amendment, *see* 82 Fed. Reg. at 43,494, and the Court "can hardly order [the agency] to do something that it has already done," *Nat'l Ass'n of Home Builders v. Salazar*, 827 F. Supp. 2d 1, 8 (D.D.C. 2011) (quoting *NRDC*, 680 F.2d at 814). In addition, the deadlines for the other two wastestreams were superseded by the ELG Rule Amendment, which proceeded through full notice-and-comment rulemaking and replaced the relevant deadlines imposed by the ELG Rule and postponed by the Stay. 82 Fed. Reg. at 43,496. The Court cannot reinstate those deadlines absent a challenge to the ELG Rule Amendment, which is not properly before the Court. *See supra* Section II; *Ctr. for Sci.*, 727 F.2d at 1164 ("[I]t is not improper for an agency to engage in new rulemaking to supersede defective rulemaking. . . . [A]n ultimate determination of the rights and obligations of the parties concerning [the subject matter of the superseded rule] can emerge only upon consideration of the validity of [the superseding rule]."). Because this case no longer presents live issues and "nothing would turn on [its] outcome," the case is moot. *Coal. of Airline*

*Pilots Ass'ns v. FAA*, 370 F.3d 1184, 1191 (D.C. Cir. 2004) (quotation marks and alterations omitted).

### C. Exceptions

Moreover, this case does not implicate the mootness exceptions for challenged actions that are "voluntarily ceased" or for actions that are "capable of repetition yet evade review." *See Cierco*, 857 F.3d at 414–15.

#### 1. Voluntary Cessation

"As a general rule, a defendant's 'voluntary cessation of allegedly illegal conduct does not deprive [a court] of power to hear and determine the case." *Id.* at 414 (quoting *Cty. of L.A. v. Davis*, 440 U.S. 625, 631 (1979)). Rather, voluntary cessation will only moot a case if the defendant shows that (1) "there is no reasonable expectation that the alleged violation will recur" and (2) "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Id.* at 414–15 (quotation marks and alterations omitted).

First, there is no reasonable expectation that the challenged stay will recur. The EPA not only withdrew the Indefinite Stay, but also replaced the Stay with the ELG Rule Amendment. As a result, this case does not present a situation in which the agency voluntarily ceased an informal action but might reinstate the same action at any time. Rather, the EPA deliberated via full notice-and-comment rulemaking, then decided that "there is no longer any need for the Agency to maintain" the Stay and formalized that decision by partially changing compliance dates for some wastestreams while imposing compliance dates for other wastestreams as originally set by the ELG Rule. *See* 82 Fed. Reg. at 43,496.

Against this agency deliberation and rulemaking to withdraw and replace the Indefinite Stay, the plaintiffs argue that the EPA might reinstate the Stay if the ELG Rule Amendment is

vacated by a court. *See* Pls.' Opp'n at 10. But such speculation is insufficient to establish that the challenged stay will likely recur. *See Chamber of Commerce v. EPA*, 642 F.3d 192, 208 (D.C. Cir. 2011) ("[T]he federal regulations [here, the ELG Rule and ELG Rule Amendment] are currently in force, subject to the usual presumption of validity, and at this point the possibility that they may be invalidated is nothing more than speculation." (citation omitted)). In a similar case, the D.C. Circuit held moot a challenge to the EPA's decision to waive federal preemption of California's more stringent vehicle standards. After waiving preemption, the EPA promulgated new vehicle standards as stringent as California's. California, no longer needing a waiver to enforce stringent standards, then withdrew its own standards in favor of the EPA's. Holding the case moot, the D.C. Circuit explained:

> The prospect that litigants could be injured "if" a court were someday to invalidate the federal regulations and "if" California thereafter were to reimpose its standards, is little different from the prospect that any litigant could be injured "if" EPA (or Congress) were eventually to enact a rule it presently had under consideration. To seek judicial review of such a contemplated-but-not-yet-enacted rule is to ask the court for an advisory opinion in connection with an event that may never come to pass.

*Id.* It would require similarly impermissible speculation to forecast that the ELG Rule Amendment will be vacated and that the EPA will then decide to reinstate the Indefinite Stay challenged in this case.

The plaintiffs look even further into the future when they assert that the EPA might reinstate the stay if the agency is still reconsidering the ELG Rule in late 2020, *i.e.*, when the Amendment's new compliance deadlines begin to kick in. *See* Pls.' Opp'n at 10–11. In support, the plaintiffs point to the preamble of the ELG Rule Amendment, which stated: "If EPA does not complete a new rulemaking by November, 2020, it plans to further postpone the compliance dates such that the earliest compliance date is not prior to completion of a new rulemaking." 82

Fed. Reg. at 43,494.  It is speculative to conclude, based on the preamble alone, that the EPA will need more than three years from the ELG Rule Amendment to complete its new rulemaking. Indeed, the three-years projection is not guesswork; rather, the EPA calculated that the new rulemaking will take approximately three years by "reflecting on the time it typically takes the Agency to propose and finalize revised effluent limitations guidelines and standards" and "the characteristics of this industry and the anticipated scope of the next rulemaking."  *Id.* at 43,498.

And even if the rulemaking ends up requiring three years, the EPA may not issue a stay like that challenged here.  Instead, the EPA may postpone the compliance dates with a notice-and-comment rule, just as it did via the ELG Rule Amendment.  And any future stay would likely involve only the two wastestreams currently under reconsideration, not the five wastestreams addressed by the challenged stay, because the ELG Rule Amendment already reinstated deadlines for three of the five wastestreams based on an explicit EPA decision *not* to reconsider the ELG Rule's requirements for those wastestreams.  *See* 82 Fed. Reg. at 43,498. These "hypothetical possibilities . . . are nothing more than possibilities regarding regulations and enforcement policies that do not presently exist.  This is not enough to give rise to a live dispute."  *Am. Bar Ass'n v. FTC*, 636 F.3d 641, 647 (D.C. Cir. 2011).

Finally, and even more speculatively, the plaintiffs argue that the challenged stay is likely to recur because the EPA and other agencies have stayed or might stay other regulations.  *See* Pls.' Opp'n at 11–12.  The plaintiffs identify one other action by the EPA to stay different regulations under Section 705 of the Administrative Procedure Act, *see* 82 Fed. Reg. 32,357 (July 13, 2017), as well as two actions by the Department of Interior and the Bureau of Land Management to stay different regulations promulgated under different substantive statutes, *see* 82 Fed. Reg. 27,430 (June 15, 2017) (BLM stay of regulations governing venting, flaring, and

leaking during oil and natural gas production activities on onshore federal leases); 82 Fed. Reg. Fed. Reg. 11,823 (Feb. 27, 2017) (DOI stay of coal valuation rule); *see also California v. BLM*, 277 F. Supp. 3d 1106 (N.D. Cal. 2017) (analyzing BLM stay), *appeal filed*, No. 17-17456 (9th Cir. Dec. 8, 2017); *Becerra v. DOI*, 276 F. Supp. 3d 953 (N.D. Cal. 2017) (analyzing DOI stay). The plaintiffs also assert that the EPA might issue stays in the future because the agency has expressed a general intent to review current regulations. *See* 82 Fed. Reg. 17,793 (Apr. 13, 2017). Such examples, however, have little bearing on whether the challenged stay will recur. Isolated invocations of Section 705 to stay other regulations promulgated under other substantive statutes do not indicate that the EPA will again stay the ELG Rule specifically, or even other regulations generally promulgated under the Clean Water Act. And the examples certainly do not indicate that the EPA will stay the particular aspects of the ELG Rule implicated in this case. To the contrary, the EPA decided via the notice-and-comment process that the ELG Rule Amendment made such a stay unnecessary. *See* 82 Fed. Reg. at 43,496. As a result, there is not a reasonable expectation that the challenged stay will recur.

Turning briefly to the second prong of the "voluntary cessation" exception to mootness, intervening events have completely and irrevocably eradicated the effects of the alleged violation. Because the Indefinite Stay was withdrawn and replaced by the ELG Rule Amendment, the Stay is "now devoid of any legal effect." *Coal. of Airline Pilots Ass'ns*, 370 F.3d at 1191. To the extent that the plaintiffs suffer any harm from the modified compliance deadlines going forward, the harmful effects will stem from the ELG Rule Amendment, not the withdrawn Stay.

To resist this conclusion, the plaintiffs conjecture that the withdrawal "has not alleviated . . . the disruptive effects that the [S]tay has had on state and utility implementation of the ELG

Rule." Pls.' Opp'n at 14. But regardless of whether the Indefinite Stay encouraged states and utilities to delay implementation during summer 2017, the Stay ceased to have that effect when it was withdrawn and replaced in September 2017. Consider the plaintiffs' examples. The plaintiffs assert that the Stay continues to have harmful effects because the state of Nebraska and an Indiana utility cited the Stay in summer 2017 when making compliance decisions regarding the ELG Rule. The extent to which these past compliance decisions would have differed in the absence of the Stay, however, remains entirely speculative. And regardless of whether Nebraska and the Indiana utility modified their behavior based on the Stay, the ELG Rule Amendment requires them to adhere to a different compliance regime, from which any continuing harms will stem. As a result, the ELG Rule Amendment eradicated the effects of the allegedly unlawful stay, and the Court concludes that the "voluntary cessation" exception does not apply in this case.

2. Capable of Repetition yet Evading Review

Similarly inapplicable is the mootness exception for disputes that are "capable of repetition yet evade review." This exception applies if the plaintiffs show that (1) "the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration" and (2) "there was a reasonable expectation that the same complaining party would be subjected to the same action again." *United Bhd. of Carpenters v. Operative Plasterers' Int'l Ass'n*, 721 F.3d 678, 687 (D.C. Cir. 2013) (quoting *Murphy v. Hunt*, 455 U.S. 478, 482 (1982)). First, the plaintiffs fail to show that the duration of the challenged action was by its nature too short to be fully litigated. In this case, multiple dispositive motions, including cross-motions for summary judgment, were fully briefed before the stay was withdrawn and replaced by the ELG Rule Amendment; the litigation was thus ripe for decision. *See* Dkt. 20; Dkt. 32; Dkt. 49.

Moreover, the plaintiffs themselves cite two recent cases in which Section 705 stays have been fully litigated. *See California*, 277 F. Supp. 3d at 1106; *Becerra*, 276 F. Supp. 3d at 953. Second, even if the challenged action were too short to be fully litigated, the plaintiffs fail to show a reasonable expectation that the same complaining party would be subjected to the same action again. As discussed above, the EPA is unlikely to subject the plaintiffs to the same stay again. *See supra* Section III.C.1. Therefore, the "capable of repetition yet evading review" exception does not apply. This case is moot and must be dismissed.

**CONCLUSION**

For the foregoing reasons, the Court denies the Plaintiffs' Motion for Leave to Amend and Supplement the Complaint, Dkt. 63, and the Court grants the Defendants' Motion to Dismiss, Dkt. 60. In addition, because the Court dismisses this action, the Court denies as moot the Plaintiffs' Motion for Summary Judgment, Dkt. 20, the Defendants' Cross-Motion for Summary Judgment or Dismissal or Transfer, Dkt. 32, and the Intervenor-Defendant's Cross-Motion for Summary Judgment or Dismissal or Transfer, Dkt. 49. A separate order consistent with this decision accompanies this memorandum opinion.

Dabney L. Friedrich

DABNEY L. FRIEDRICH
United States District Judge

Date: April 18, 2018